## MOLZOF, PERSONAL REPRESENTATIVE OF THE ESTATE OF MOLZOF *v.* UNITED STATES

No. 90–838.   Argued November 4, 1991—Decided January 14, 1992

THOMAS, J., delivered the opinion for a unanimous Court.

*Daniel R. Rottier* argued the cause for petitioner. With him on the briefs were *Virginia M. Antoine* and *Thomas H. Geyer.*

*Acting Deputy Solicitor General Wright* argued the cause for the United States. With him on the brief were *Solicitor General Starr, Assistant Attorney General Gerson, Clifford M. Sloan, Anthony J. Steinmeyer,* and *Irene M. Solet.*

JUSTICE THOMAS delivered the opinion of the Court.

This case requires us to determine the scope of the statutory prohibition on awards of "punitive damages" in cases brought against the United States under the Federal Tort Claims Act, 28 U. S. C. §§ 2671–2680.

## I

Petitioner Shirley Molzof is the personal representative of the estate of Robert Molzof, her late husband. On October 31, 1986, Mr. Molzof, a veteran, underwent lung surgery at a Veterans' Administration hospital in Madison, Wisconsin. After surgery, he was placed on a ventilator. For some undisclosed reason, the ventilator tube that was providing oxygen to him became disconnected. The ventilator's alarm system also was disconnected. As a result of this combination of events, Mr. Molzof was deprived of oxygen for approximately eight minutes before his predicament was discovered. Because of this unfortunate series of events, triggered by the hospital employees' conceded negligence, Mr. Molzof suffered irreversible brain damage, leaving him permanently comatose.

Mr. Molzof's guardian ad litem filed suit in District Court under the Federal Tort Claims Act (FTCA or Act) seeking damages for supplemental medical care, future medical expenses, and loss of enjoyment of life. The Government admitted liability, and the case proceeded to a bench trial on the issue of damages. The District Court determined that the free medical care being provided to Mr. Molzof by the veterans' hospital was reasonable and adequate, that Mrs. Molzof was satisfied with those services and had no intention of transferring Mr. Molzof to a private hospital, and that it was in Mr. Molzof's best interests to remain at the veterans' hospital because neighboring hospitals could not provide a comparable level of care. In addition to ordering the veterans' hospital to continue the same level of care, the court awarded Mr. Molzof damages for supplemental care—physi-

cal therapy, respiratory therapy, and weekly doctor's visits—not provided by the veterans' hospital.

The District Court refused, however, to award damages for medical care that would duplicate the free medical services already being provided by the veterans' hospital. Similarly, the court declined to award Mr. Molzof damages for loss of enjoyment of life. Mr. Molzof died after final judgment had been entered, and Mrs. Molzof was substituted as plaintiff in her capacity as personal representative of her late husband's estate.

The United States Court of Appeals for the Seventh Circuit affirmed the District Court's judgment. 911 F. 2d 18 (1990). The Court of Appeals agreed with the District Court that, given the Government's provision of free medical care to Mr. Molzof and Mrs. Molzof's apparent satisfaction with that care, any award for future medical expenses would be punitive in effect and was therefore barred by the FTCA prohibition on "punitive damages." *Id.*, at 21. With respect to the claim for Mr. Molzof's loss of enjoyment of life, the Court of Appeals stated that Wisconsin law was unclear on the question whether a comatose plaintiff could recover such damages. *Ibid.* The court decided, however, that "even if Wisconsin courts recognized the claim for loss of enjoyment of life, in this case it would be barred as punitive under the Federal Tort Claims Act," *ibid.*, because "an award of damages for loss of enjoyment of life can in no way recompense, reimburse or otherwise redress a comatose patient's uncognizable loss . . . ." *Id.*, at 22. We granted certiorari to consider the meaning of the term "punitive damages" as used in the FTCA. 499 U. S. 918 (1991).

## II

Prior to 1946, the sovereign immunity of the United States prevented those injured by the negligent acts of federal employees from obtaining redress through lawsuits; compensation could be had only by passage of a private bill in Con-

gress. See *Dalehite* v. *United States,* 346 U. S. 15, 24–25 (1953). The FTCA replaced that "notoriously clumsy," *id.,* at 25, system of compensation with a limited waiver of the United States' sovereign immunity. *United States* v. *Orleans,* 425 U. S. 807, 813 (1976). In this case, we must determine the scope of that waiver as it relates to awards of "punitive damages" against the United States. The FTCA provides in pertinent part as follows:

> "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, *but shall not be liable* for interest prior to judgment or *for punitive damages.*" 28 U. S. C. § 2674 (emphasis added).

As this provision makes clear, in conjunction with the jurisdictional grant over FTCA cases in 28 U. S. C. § 1346(b), the extent of the United States' liability under the FTCA is generally determined by reference to state law. See *United States* v. *Muniz,* 374 U. S. 150, 153 (1963); *Richards* v. *United States,* 369 U. S. 1, 6–7, 11 (1962); *Rayonier Inc.* v. *United States,* 352 U. S. 315, 318–319 (1957); *Indian Towing Co.* v. *United States,* 350 U. S. 61, 64–65, 68–69 (1955); *United States* v. *Aetna Casualty & Surety Co.,* 338 U. S. 366, 370 (1949).

Nevertheless, the meaning of the term "punitive damages" as used in § 2674, a federal statute, is by definition a federal question. Cf. *Reconstruction Finance Corp.* v. *Beaver County,* 328 U. S. 204, 208 (1946) (definition of "real property" as used in a federal statute is a federal question). Petitioner argues that "§ 2674 must be interpreted so as to permit awards against the United States of those state-law damages which are intended by state law to act as compensation for injuries sustained as a result of the tort, and to preclude awards of damages which are intended to act as punishment for egregious conduct." Brief for Petitioner 8; see

also *id.*, at 12. We understand petitioner to be suggesting that the Court define the term "punitive damages" by reference to traditional common law, leaving plaintiffs free to recover any damages that cannot be characterized as "punitive" under that standard. The Government, on the other hand, suggests that we define "punitive damages" as "damages that are in excess of, or bear no relation to, compensation." Brief for United States 5. In the Government's view, there is a strict dichotomy between compensatory and punitive damages; damages that are not strictly compensatory are necessarily "punitive damages" barred by the statute. Thus, the Government contends that any damages other than those awarded for a plaintiff's *actual* loss—which the Government narrowly construes to exclude damages that are excessive, duplicative, or for an inherently noncompensable loss, *id.*, at 22—are "punitive damages" because they are punitive *in effect*.

We agree with petitioner's interpretation of the term "punitive damages," and conclude that the Government's reading of § 2674 is contrary to the statutory language. Section 2674 prohibits awards of "punitive damages," not "damages awards that may have a punitive effect." "Punitive damages" is a legal term of art that has a widely accepted common-law meaning; "[p]unitive damages have long been a part of traditional state tort law." *Silkwood* v. *Kerr-McGee Corp.*, 464 U. S. 238, 255 (1984). Although the precise nature and use of punitive damages may have evolved over time, and the size and frequency of such awards may have increased, this Court's decisions make clear that the concept of "punitive damages" has a long pedigree in the law. "It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offence rather than the measure of compensation to the plaintiff." *Day* v. *Woodworth*, 13 How. 363, 371 (1852). See

also *Pacific Mut. Life Ins. Co.* v. *Haslip,* 499 U. S. 1, 15–17 (1991); *id.,* at 25–27 (SCALIA, J., concurring in judgment).

Legal dictionaries in existence when the FTCA was drafted and enacted indicate that "punitive damages" were commonly understood to be damages awarded to punish defendants for torts committed with fraud, actual malice, violence, or oppression. See, *e. g.,* Black's Law Dictionary 501 (3d ed. 1933); The Cyclopedic Law Dictionary 292 (3d ed. 1940). On more than one occasion, this Court has confirmed that general understanding. "By definition, punitive damages are based upon the degree of the defendant's culpability." *Massachusetts Bonding & Ins. Co.* v. *United States,* 352 U. S. 128, 133 (1956); see also *Browning-Ferris Industries of Vt., Inc.* v. *Kelco Disposal, Inc.,* 492 U. S. 257, 274, n. 20, 278, n. 24 (1989); *Milwaukee & St. Paul R. Co.* v. *Arms,* 91 U. S. 489, 493 (1876); *Day* v. *Woodworth, supra,* at 371. The common-law definition of "punitive damages" focuses on the nature of the defendant's conduct. As a general rule, the common law recognizes that damages intended to compensate the plaintiff are different in kind from "punitive damages."

A cardinal rule of statutory construction holds that:

> "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." *Morissette* v. *United States,* 342 U. S. 246, 263 (1952).

See also *NLRB* v. *Amax Coal Co.,* 453 U. S. 322, 329 (1981); *Braxton* v. *United States,* 500 U. S. 344, 351, n. (1991). This rule carries particular force in interpreting the FTCA. "Cer-

tainly there is no warrant for assuming that Congress was unaware of established tort definitions when it enacted the Tort Claims Act in 1946, after spending 'some twenty-eight years of congressional drafting and redrafting, amendment and counter-amendment.'" *United States* v. *Neustadt,* 366 U. S. 696, 707 (1961) (quoting *United States* v. *Spelar,* 338 U. S. 217, 219–220 (1949)).

The Government's interpretation of § 2674 appears to be premised on the assumption that the statute provides that the United States "shall be liable only for compensatory damages." But the first clause of § 2674, the provision we are interpreting, does not say that. What it clearly states is that the United States "shall not be liable . . . for punitive damages." The difference is important. The statutory language suggests that to the extent a plaintiff may be entitled to damages that are not legally considered "punitive damages," but which are for some reason above and beyond ordinary notions of compensation, the United States is liable "in the same manner and to the same extent as a private individual." These damages in the "gray" zone are not by definition "punitive damages" barred under the Act. In the ordinary case in which an award of compensatory damages is subsequently reduced on appeal, one does not say that the jury or the lower court mistakenly awarded "punitive damages" above and beyond the actual compensatory damages. It is simply a matter of excessive or erroneous compensation. Excessiveness principles affect only the amount, and not the nature, of the damages that may be recovered. The term "punitive damages," on the other hand, embodies an element of the defendant's conduct that must be proved before such damages are awarded.

The Government argues that we must construe the prohibition on "punitive damages" *in pari materia* with the second clause of § 2674 which was added by Congress just one year after the FTCA was enacted. The amendment provides as follows:

> "If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof." 28 U. S. C. § 2674.

This provision was added to the statute to address the fact that two States, Alabama and Massachusetts, permitted only punitive damages in wrongful-death actions. *Massachusetts Bonding & Ins. Co.* v. *United States, supra,* at 130–131. The Government contends that the second clause of § 2674 "confirms the compensatory purpose of the statute and demonstrates that Congress intended to define 'punitive damages' by contrasting them with 'actual or compensatory damages.'" Brief for United States 18–19 (footnote omitted). This argument is undermined, however, not only by the fact that "punitive damages" is a legal term of art with a well-established common-law meaning, but also by the Government's own statement that, although the second clause defines "actual or compensatory damages" as "the pecuniary injuries resulting from such death," the "pecuniary injuries" standard does not apply in determining compensatory damages in any other kind of tort suit against the United States. *Id.,* at 19, n. 13. Given this concession, which we agree to be a correct statement of the law, the second clause of § 2674 cannot be read as proving so much as the Government claims.

The Government's interpretation of "punitive damages" would be difficult and impractical to apply. Under the Government's reading, an argument could be made that Mr. Molzof's damages for future medical expenses would have to be reduced by the amount he saved on rent, meals, clothing, and other daily living expenses that he did not incur while

hospitalized. Otherwise, these duplicative damages would be "punitive damages" because they have the effect of making the United States pay twice. The difficulties inherent in attempting to prove such offsets would be enormous. That the Government has refused to acknowledge the practical implications of its theory is evidenced by its representations at oral argument that, as a general matter, it is willing to accept state-law definitions of compensatory awards for purposes of the FTCA, Tr. of Oral Arg. 28, and that "there are very few circumstances" in which States have authorized damages awards that the Government would challenge as punitive, *id.*, at 38.

The Government's reading of the statute also would create problems in liquidated damages cases and in other contexts in which certain kinds of injuries are compensated at fixed levels that may or may not correspond to a particular plaintiff's actual loss. At oral argument, however, the Government disclaimed that extension of its theory, see *id.*, at 28, 35, and instead asserted that its position was that state compensatory awards are recoverable under the Act so long as they are a "reasonable" approximation of the plaintiff's actual damages, *id.*, at 36. We agree that § 2674 surely does not prohibit any compensatory award that departs from the actual damages in a particular case. But the Government's restrictive reading of the statute would involve the federal courts in the impractical business of determining the actual loss suffered in each case and whether the damages awarded are a "reasonable" approximation of that loss.

Finally, we reject the Government's reliance on this Court's interpretations of various statutory exceptions to FTCA liability contained in § 2680, some of which depart from traditional common-law concepts, as supportive of the notion that we should adopt a definition of "punitive damages" that departs from the common law. Many of the § 2680 exceptions simply have no obvious common-law antecedent. For example, § 2680(a) provides that the United

States shall not be liable for any claim based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government." 28 U. S. C. § 2680(a). It would have made little sense to try to incorporate common-law standards in explicating terms like "discretionary function" in the absence of any evidence that such concepts had any basis in the common law of most States or had been given some widely shared meaning. In marked contrast, the concept of "punitive damages" is deeply rooted in the common law.

An examination of the nature of the exceptions in § 2680 further demonstrates that those limitations serve a qualitatively different purpose than § 2674's bar on "punitive damages." The § 2680 exceptions are designed to protect certain important governmental functions and prerogatives from disruption. They mark "the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States* v. *Varig Airlines*, 467 U. S. 797, 808 (1984). Through the § 2680 exceptions, "Congress has taken steps to protect the Government from liability that would seriously handicap efficient government operations." *United States* v. *Muniz*, 374 U. S., at 163. See also *United States* v. *Gaubert*, 499 U. S. 315, 322–323 (1991); *Berkovitz* v. *United States*, 486 U. S. 531, 536–537 (1988). For example, there are exceptions for claims involving the mishandling of mail, § 2680(b), the assessment or collection of taxes or customs duties, § 2680(c), the imposition or establishment of a quarantine, § 2680(f), damages caused by the fiscal operations of the Treasury or by regulation of the monetary system, § 2680(i), the combatant activities of the military, § 2680(j), the activities of the Tennessee Valley Authority or the Panama Canal Company, §§ 2680(l), (m), and the activities of federal land banks, § 2680(n). These examples suggest that Congress'

primary concern in enumerating the § 2680 exceptions was to retain sovereign immunity with respect to certain governmental *functions* that might otherwise be disrupted by FTCA lawsuits. That the Court has not relied on the common law in interpreting some of the exceptions in § 2680, then, is not persuasive evidence that it should do the same in interpreting § 2674.

We conclude that § 2674 bars the recovery only of what are *legally* considered "punitive damages" under traditional common-law principles. This reading of the statute is consistent with the language of § 2674 and the structure of the Act, and it provides courts with a workable standard for determining when a plaintiff is improperly seeking "punitive damages" against the United States. Our interpretation of the term "punitive damages" requires us to reverse the Court of Appeals' decision that Mrs. Molzof is not permitted to recover damages for her husband's future medical expenses and his loss of enjoyment of life. It is undisputed that the claims in this case are based solely on a simple negligence theory of liability. Thus, the damages Mrs. Molzof seeks to recover are not punitive damages under the common law or the FTCA because their recoverability does not depend upon any proof that the defendant has engaged in intentional or egregious misconduct and their purpose is not to punish. We must remand, however, because we are in no position to evaluate the recoverability of those damages under Wisconsin law. Cf. *Sheridan* v. *United States,* 487 U. S. 392, 401, and n. 6 (1988). It may be that under Wisconsin law the damages sought in this case are not recoverable as compensatory damages. This might be true because Wisconsin law does not recognize such damages, or because it requires a setoff when a defendant already has paid (or agreed to pay) expenses incurred by the plaintiff, or for some other reason. These questions were not resolved by the lower courts.

## III

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*