NAKAJIMA, Ishiro, individually and as personal representative of the Estate of Keiji Nakajima, Plaintiff–Appellee, Cross–Appellant,

Nakajima, Yoshiko, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant, Cross–Appellee.

No. 91–5534.

United States Court of Appeals, Eleventh Circuit.

July 7, 1992.

---

Douglas Coleman, Torts Branch Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant, cross-appellee.

Scott D. Sheftall, Robert C. Levine, Floyd Pearson Richman Greer Weil Zack Brumbaugh & Russomanno, P.A., Miami, Fla., for plaintiff-appellee, cross-appellant.

Before FAY and BIRCH, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

This is a wrongful death case against the United States, brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. The complaint alleged negligence of the FAA air traffic controller on duty at the Opa Locka airport at the time a Cessna 152 airplane collided in a mid-air crash with a Bell 47G helicopter. The district court found the United States to be 70% at fault and Keiji Nakajima, the helicopter pilot, to be 30% at fault. 759 F.Supp. 1573. The award in favor of the Estate of Keiji Nakajima was reduced based on the district court's finding that Nakajima was contributorily negligent. The Estate and the government cross-appeal.

We conclude (1) that the district court erred in applying the standard of care for avoidance maneuvers based on the "see and avoid" rule against Nakajima; (2) that Nakajima was not contributorily negligent; and (3) that the Nakajima Estate is entitled to full recovery of the damages assessed against the United States under the Federal Tort Claims Act. We therefore REVERSE in part, Affirm the total damage award, and REMAND with instructions to award plaintiff the total amount of damages without a 30% reduction.

## BACKGROUND

Keiji Nakajima, a 27 year-old student pilot, was fatally injured in a mid-air crash involving his helicopter and a Cessna airplane. The accident occurred on August 31, 1987 over the Opa Locka airport in Miami, Florida.

The air traffic controller on duty at the airport was aware that the helicopter and the Cessna were engaged in training and practice exercises. The single engine Cessna, with an instructor and a student pilot on-board, had been cleared for takeoff on runway 9L to enter the downwind position for "touch and go" practice landings. The Cessna was to maintain an essentially rectangular flight pattern during the training exercise. The helicopter had also been cleared by the tower for "touch and go" landings. The helicopter's flight pattern was in "Area Alpha," which is adjacent to runway 9R. On each aircraft's last clearance from the tower, neither was informed that the other was still operating in the area, as they had been on their earlier communications with the tower. The Cessna descended and overtook the helicopter by turning from the base leg to final approach in executing a simulated forced landing. The Cessna collided with the helicopter from above and from the rear on the helicopter's blind side. The accident occurred in mid-air outside the control tower in clear weather conditions.

## ISSUES RAISED

The Estate contends that the district court erred in applying the "see and avoid"

rule of right-of-way against Nakajima, as a basis for finding breach of a duty, resulting in a 30% reduction in recoverable damages against the United States.

The government contends (1) that the district court erred in not finding the degree of fault of Nakajima to be greater than 30%, and (2) that the district court erred in calculating the amount of damages in reliance on allegedly faulty and speculative assumptions of two expert witnesses.

## ANALYSIS

### 1. *Pilot's Duty to "See and Avoid"*

■ The district court found that Nakajima was contributorily negligent for failing to avoid the oncoming Cessna. The rule of law applied by the district court requires a pilot to exercise the statutory duty to see and avoid other aircraft. That duty "is not excused because [the pilot] may have to maneuver his own aircraft in order to see the area in which another aircraft might be located." *United States v. Miller,* 303 F.2d 703 (9th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 507, 9 L.Ed.2d 502 (1963). Even in light of the fact that the Cessna had initiated an unexpected maneuver and entered into the helicopter's flight pattern in a blind spot without warning, the district court determined that Nakajima was partially at fault.

Nakajima argues that the district court erred as a matter of law in applying this negligence standard under the facts of this case. Our review is de novo to determine whether the correct legal standard, including exceptions to the "see and avoid" rule, was properly applied.

The district court relied on *Miller,* a case where the pilot was found negligent for a violation of the right-of-way rules upon converging with and overtaking another aircraft. In *Miller,* the pilot failed "to give way to the Cessna which was in the favored position, or from doing whatever was necessary to clear the area in which the Cessna was flying." *Id.* at 711.

Since the pilot who was found to be contributorily negligent in *Miller* was held to a duty to maintain "a reasonable lookout

while approaching the point of impact," *id.* at 707, the facts in *Miller* are exactly opposite to the facts in Nakajima's case. In the context of interpreting the obligation of a pilot operating under visual flight rules (VFR) to see and avoid other aircraft, the district court misapplied the rule which governs right of way. The rule of *Miller* is applicable to "the overtaking aircraft, whether climbing, descending, or in horizontal flight." *Id.* at n. 9 (referring to paragraph (d) of the right of way rules, 14 CFR, part 60, section 60.14).

■ We agree with Nakajima that there was no reason for Keiji Nakajima to take extraordinary measures to search for an unknown and unexpected hazard. We do not interpret the rule to require a pilot under these circumstances to keep a lookout to anticipate another aircraft coming toward his aircraft from behind and above, when the ability to see the oncoming aircraft in a blind spot is an utter impossibility. *See Bernard v. Cessna Aircraft Corp.,* 614 F.2d 1075, 1078 (5th Cir.1980). While the general rule imposes on pilots an independent obligation to operate their aircraft safely and make necessary observations to avoid other aircraft, extraordinary maneuvers by Nakajima would not have brought the Cessna into view as it approached the helicopter. Thus, the duty to scan within or beyond the normal range has no application here. *See Rodriguez v. United States,* 823 F.2d 735, 744–45 (3rd Cir.1987).

The facts of this case fall within the exception noted in *Miller,* of a "physical impossibility" which contemplates conditions "beyond the pilot's control". *Id.* at 709. Because of the helicopter's position in its assigned pattern and the lack of warning or possible visibility relevant to the approaching Cessna, these facts clearly represent a circumstance where the "see and avoid" rule is not applicable to determine liability. For example, in *Universal Aviation Underwriters v. United States,* 496 F.Supp. 639, 649 (D.Col.1980), the court reasoned that the concept of "see and avoid" is inapplicable where each aircraft was in the blind spot of the other. Also, in

*Allen v. United States,* 370 F.Supp. 992, 1004 (E.D.Mo.1973), the court held that the pilot could not be found contributorily negligent as a matter of law, where "it was physically impossible to see the above approaching Ozark due to the Cessna's high wing structure."

We conclude, therefore, that the district court erred in finding Nakajima contributorily negligent for breach of the duty to "see and avoid" the Cessna.

### 2. *Negligence Based on Deviation from Traffic Pattern*

On cross-appeal, the government contends that the district court's allocation of 30% fault to Nakajima failed to take into account the decedent's additional negligence in deviating from the published traffic pattern. The government argues that the percentage of Nakajima's fault must be increased. We disagree.

The record simply does not support the government's argument that Nakajima deviated from his pattern and was therefore more at fault for this accident than the air traffic controller. We have considered this argument and find it to be without merit, as did the district court.

### 3. *Damages Based on Loss of Prospective Net Estate Accumulations*

The government challenges the factual findings upon which the district court based the award of damages under the Florida Wrongful Death Act, Fla.Stat. § 768.21(6)(a), which provides a remedy for survivors.[1]

The district court determined the present value of decedent's projected net estate accumulations to be $590,000. Damages were calculated at the total amount of $637,407. The district court relied on information presented at trial by two expert economists to derive the damage amount. The government argues that the economists arrived at grossly inflated values by basing their opinions on incorrect or invalid assumptions.

■ We review the issue of whether damages were properly determined under the clearly erroneous standard. *Hiatt v. United States,* 910 F.2d 737, 744 (11th Cir. 1990); *Self v. Great Lakes Dredge & Dock Co.,* 832 F.2d 1540, 1551 (11th Cir.1987), *cert. denied,* 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988) (an expert's assumption adopted by the court and not supported by the evidence is clearly erroneous); *Internat'l Paper Co. v. United States,* 227 F.2d 201, 205 n. 5 (5th Cir.1955) (where unwarranted assumptions of fact guide the experts and are used as a basis for value by the court, the evaluations will be set aside and the cause remanded for new findings).

■ The economists who testified for the plaintiff assumed that the decedent would save 25% of his disposable income every year during his lifetime. The government argues that the court's acceptance of an economic analysis which assumed a continued savings rate at 25% after retirement was clearly erroneous for the following reasons: (1) the demonstrated savings rate (obtained by dividing the total savings into total income) for the decedent up to the time of the accident would be between 12.7% and 15.4%, far below the assumed savings rate accepted by the court; (2) the average savings rate in Japan at the time of decedent's death was around 15% and declining.

Considerable deference is afforded the district court when this court reviews such damage awards. *Hiatt,* 910 F.2d at 742. After reviewing the record, we are satisfied that the district court's findings with respect to projected net accumulations of the estate of Keiji Nakajima are not clearly erroneous. The assumptions of the experts adopted by the district court are based on reasonable and reliable data, relevant to the calculations of projected savings of a

1. The government has withdrawn its argument that the award represents punitive damages which are prohibited by the FTCA. In *Molzof v. United States,* — U.S. —, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992), the Supreme Court rejected this theory. The Court held that the FTCA bars recovery only of what were legally considered "punitive damages" under traditional common law principles. *See Hiatt v. United States,* 910 F.2d 737 (11th Cir.1990).

future helicopter pilot living in Japan and continuing to work in his profession.

The expert testimony regarding savings rate given by Professor Sandberg, a Harvard educated economist, and Professor Hashimoto, a Japanese-born, Columbia University educated economist, was based on the household survey for salaried workers in Japan. They assumed that Mr. Nakajima would have become a full-time employed helicopter pilot. Their source differed from the government's broad-based source which sampled "all households." Professor Sandberg explained that use of general savings data over the entire life, including retirement years, rather than the working life of the individual, compensates for a downwardly biased rate which does not account for accumulation of consumer durables as savings. He explained that for purposes of determining net accumulations, the goal is to estimate the accumulation of wealth, including capital assets and cash.

The evidence of relatively high growth rates of wages for helicopter pilots in Japan was based on Wage Census data. This evidence was corroborated by news source reports and analyses as well as the testimony of a job placement specialist for a company that trains helicopter pilots in Japan. The court accepted estimates based on Nakajima's potential for success in this growing profession. In addition, the evidence was more than sufficient for the district court to determine that Keiji Nakajima was skilled, when it evaluated the testimony of the helicopter flight instructor who had an opportunity to observe Nakajima's skill first-hand during the course of his helicopter flight training.

We find no clear error in the district court's reliance on the evidence presented by these experts and informed professionals as a basis for determining the amount of damages.

## CONCLUSION

We reverse the district court's finding that Nakajima was contributorily negligent for failing to "see and avoid" the approaching Cessna. It follows that the amount of damages awarded the plaintiff Estate should not be reduced by 30%.

We affirm the district court's calculation of the total damage award. The plaintiff Estate is entitled to a judgment for that amount.

The case is remanded to the district court with directions to enter judgment in accordance with this opinion.

REVERSED in part, AFFIRMED in part, and REMANDED.