**Jim BREWER, Special Administrator of the Estate of Norman Brewer, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant/Third–Party Plaintiff,**

v.

**Leonard WHITE and Michael Anthony, individually, Anthony's AAA Cleaning Service, Inc., Premierco Service Corp., Premier Industrial Corp., and J.I. Holcomb Manufacturing Co., Third–Party Defendants.**

No. 91 C 7720.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 25, 1994.

Mark B. Friedman, Robert A. Rosin, Robert A. Rosin & Associates, Ltd., Chicago, IL, for Jim Brewer.

Daniel Edward May, U.S. Attorney's Office, Chicago, IL, for U.S. and Government Services Admin.

Peter G. Bell, Cassiday, Schade & Gloor, Chicago, IL, for Premierco Service Corp., Premier Indus. Corp. and J.I. Holcomb Mfg. Co.

J. Douglas Weingarten, Chicago, IL, Michael Joseph Progar, Grace E. Wein Associates, Chicago, IL, for Arnold White.

Ronald T. Bosco, Chicago, IL, for Leonard White.

Robert A. Habib, Chicago, IL, for Michael Anthony, and Anthony's AAA Cleaning Service, Inc.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court are the motions for leave of court to amend the complaint of the Estate of Norman Brewer and the Estate of Randy White (collectively the "Estates").[1] For the following reasons, the motions are granted.

## BACKGROUND [2]

Norman Brewer ("Brewer") and Randy White ("White"), of AAA Anthony's Cleaning Service, died on February 2, 1989, while they were stripping the men's washroom tile on the twenty-first floor of the Dirksen Federal Building. Brewer and White were cleaning the washroom floors with a chemical solution which asphyxiated them. The Estates properly filed administrative claims with the General Services Administration ("GSA") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–2680. Both claims were principally based on negligence theories. After the GSA denied the claims, the White and Brewer Estates filed suits against the United States of America ("Government") in March 1990 and January 1991, respectively. The two cases have not been consolidated. The Government, in turn, filed a third-party complaint against the contractor that employed Brewer and White and against the manufacturer of the chemical solution used.

Two years after the suits were filed and after the close of discovery, the Estates seek to amend their complaints with a count alleging that the Government's conduct was will-

ful and wanton. The Government objects to the Estates' proposed amendment.

## DISCUSSION

Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading is filed, a party must seek leave of court to amend its pleading. Rule 15(a) provides that courts should grant leave to file an amended pleading freely when justice so requires. Fed.R.Civ.P. 15(a). Allowing an amendment, however, is inappropriate where it is futile. *Villa v. City of Chicago,* 924 F.2d 629, 632 (7th Cir.1991). It is within the sound discretion of the district court whether to grant a motion to amend. *Campbell v. Ingersoll Milling Mach. Co.,* 893 F.2d 925, 927 (7th Cir.1990).

The Government presents two arguments to support its position that the court should deny the Estates' leave to file their amended complaints. First, the Government contends that the court lacks jurisdiction insofar as the administrative claims did not contain sufficient allegations to give rise to a willful and wanton count. Second, the Government argues that the FTCA prohibits application of the willful and wanton doctrine given the doctrine's punitive nature.

The Government's potential liability arises pursuant to the FTCA. The FTCA waives the sovereign immunity of the United States in tort suits and allows it to be sued as a private individual would be sued in the state where the injury occurred. 28 U.S.C.A. § 2674 (Supp.1994). The United States can be liable only to the extent that it has waived immunity. *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). Congress has allowed the United States to be sued where its employees cause property loss or personal injury due to the employees' negligent or wrongful acts or

1. The White Estate filed its first amended complaint on August 2, 1994, and filed its second amended complaint on August 5, 1994. The White Estate case number is No. 91 C 642. The White Estate orally requested leave to file its amended complaint, as the Brewer Estate had done, to add a willful and wanton count. Since

the issues pertaining to the motions for leave are similar and the arguments are identical, the court considers both motions in this opinion.

2. The following background is drawn from the Estates' administrative claim and from the objec-

omissions.[3] 28 U.S.C.A. § 2675(a) (Supp. 1994). However, to bring a lawsuit against the United States, the injured party must first present a claim to the appropriate federal agency which must review and deny the claim. *Id.* Thus, an FTCA suit may only be grounded in claims that have already been presented to, and denied by, the federal agency. *See Rise v. United States,* 630 F.2d 1068, 1071 (5th Cir.1980).

■ Presenting a claim to a federal agency is a condition precedent to a federal court's jurisdiction over an FTCA suit. *Id.* The Court of Appeals for the Seventh Circuit has determined that the presentment requirement of 28 U.S.C. § 2675(a) is comprised of two elements: (1) giving sufficient notice to investigate the claim, and (2) estimating a sum certain. *Charlton v. United States,* 743 F.2d 557, 559 (7th Cir.1984); *see also Santiago–Ramirez v. Secretary of Dep't of Defense,* 984 F.2d 16, 19 (1st Cir.1993). As guidance, the court refers to the Court of Appeals for the Eighth Circuit which has held that the first element above is satisfied where both the claimants and the nature of the claims are identified. *Farmers State Sav. Bank v. Farmers Home Admin.,* 866 F.2d 276, 277 (8th Cir.1989).

■ In the case sub judice, the Government asserts that the court lacks jurisdiction to adjudicate the Estates' willful and wanton counts because that theory was not sufficiently presented in the Estates' administrative claims. The court disagrees. The Estates sufficiently presented their claims to the GSA. The claims particularly estimated the damages, satisfying the second element of *Charlton,* 743 F.2d at 559. In addition, the Estates' claims, although sounding in negligence, gave sufficient notice to the GSA of the significant facts to warrant the addition of a willful and wanton count. The Estates' new count arises out of the same transaction and occurrence as the initial claim, and the claim accurately described the

nature of the circumstances surrounding the claim. Furthermore, the Government is charged with being aware of all potential causes of action that may arise from such set of facts. In Illinois, the doctrines of comparative fault and willful and wanton misconduct became intertwined over a decade ago when comparative fault was introduced. *Alvis v. Ribar,* 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886 (1981) (adopting the theory of pure comparative fault).[4] The Government cannot be heard to say that they were not aware of the mechanics of the willful and wanton theory as applied in a comparative fault jurisdiction, given that the two theories have existed together in Illinois' body of law for over a decade. Therefore, the Government received sufficient notice to thoroughly investigate the matter and ascertain its potential liability. Accordingly, the court has jurisdiction to consider the Estates' willful and wanton counts.

The Government's second argument for denying the Estates' motions for leave to file the amendments centers on the concept of "punitive damages" as defined by the statute. 28 U.S.C.A. § 2674 (Supp.1994). Section 2674 specifically prohibits the imposition of punitive damages against the United States, providing that it "shall not be liable for interest prior to judgment or for punitive damages." *Id.* The Government's concern stems from the Illinois rule, which originated in *Chicago & Miss. R.R. v. Patchin,* 16 Ill. 197 (1854), that plaintiff's contributory negligence may not be considered when defendant's conduct is found to be willful and wanton. The Government realizes that if the Estates were allowed to plead and prove that the Government's conduct was willful and wanton, then the plaintiffs' contributory negligence, which otherwise would be balanced against the defendant's negligence, would be deemed irrelevant. Neither the contributory negligence of Brewer nor that of White, if found to exist, could be used to offset any award. In other words, the willful and wanton count, if established, deprives the Gov-

tion of defendant United States of America to the Estates' motion to amend.

**3.** Congress expressly reserved its immunity from claims arising out of intentional torts. 28 U.S.C. § 2680(h).

**4.** The court acknowledges that in November 1986, as part of the developing case law in the ensuing decade, Illinois codified the doctrine of modified comparative negligence. 735 ILCS 5/2–1116.

ernment of the ability to offset an award with any comparative negligence of Brewer or White. The Government concludes that such a denial amounts to punitive damages. To resolve this issue, the court must analyze both the concept of punitive damages and the doctrine of willful and wanton misconduct.

■ The definition of the term "punitive damages" as used in 28 U.S.C. § 2674 (1988) is a federal question. *Molzof v. United States*, 502 U.S. 301, ——, 112 S.Ct. 711, 715, 116 L.Ed.2d 731 (1992). In *Molzof*, the United States opposed a damage award for future medical expenses and for loss of enjoyment of life. *Id.* at ——, 112 S.Ct. at 714. The United States argued that all awards which were not "compensation" for actual loss were "punitive damages." *Id.* at ——, 112 S.Ct. at 715. The *Molzof* Court disagreed reasoning that "Section 2674 prohibits awards of 'punitive damages,' not 'damage awards that may have a punitive effect.'" *Id.* The Court preferred the petitioner's definition of punitive damages: the term "punitive damages" should be defined "by reference to traditional common law, leaving plaintiffs free to recover any damages that cannot be characterized as 'punitive' under that standard." *Id.*

Furthermore, the Court recognized that the notion of "punitive damages" has a significant history in the common law. *Id.* Traditionally, juries assess punitive damages in reference to "the enormity of defendant's offense rather than the measure of compensation to the plaintiff." *Id.* (citing *Day v. Woodworth*, 13 How. 363, 14 L.Ed. 181 (1852); *see Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 16, 111 S.Ct. 1032, 1042, 113 L.Ed.2d 1 (1991)). Hence, the proper common law definition of punitive damages will distinguish between compensation (both actual loss and intangible loss) and punishment. Referring to the third edition of Black's Law dictionary, the Court defined the term "punitive damages" as referring to damages granted for the sole purpose of punishing. *Molzof*, 502 U.S. at ——, 112 S.Ct. at 715. "As a general rule, the common law recognizes that damages intended to compensate the plaintiff are different in kind from 'punitive damages.'" *Id.* at ——, 112 S.Ct. at 716.

■ The *Molzof* Court concluded "that § 2674 bars the recovery only of what are *legally* considered 'punitive damages' under traditional common-law principles." *Id.* at ——, 112 S.Ct. at 718 (emphasis in original). The Court held that the damages sought in *Molzof* were not "punitive damages" because they did not satisfy a two-part test: the recoverability of damages must depend upon proof that the defendant has engaged in intentional or egregious misconduct, and the purpose of the damages must be to punish. *Id.*; *see Reiser v. United States*, 786 F.Supp. 1334, 1336 (N.D.Ill.1992) (echoing the two-part test of *Molzof*). This court must adhere to that two-part definition. Having defined the term "punitive damages," the next question is whether an allegation of willful and wanton misconduct would necessarily bring the Estates' complaint within the prohibitory language of § 2674.

■ The definition of willful and wanton misconduct is not a federal question and will be defined according to Illinois law. 28 U.S.C.A. § 1346(b) (Supp.1994) (providing that a district court has jurisdiction "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred"); *see Savic v. United States*, 918 F.2d 696, 699 (7th Cir.1990) (holding that Illinois law applied to an FTCA suit); *Franklin v. United States*, 992 F.2d 1492, 1495 (10th Cir.1993) (finding that questions of tortious liability under the FTCA are determined according to state law); *Douglas v. United States*, 658 F.2d 445, 449 n. 5 (6th Cir.1981) (finding that compensatory damages are assessed according to state law, and acknowledging that state collateral source rules are applied in FTCA actions); *Yeary v. United States*, 754 F.Supp. 546, 549 (E.D.Mich.1991) (applying Wisconsin's version of comparative negligence to an FTCA suit).

■ The history of the doctrine of willful and wanton misconduct in Illinois discloses how the Illinois courts currently interpret it. The doctrine originated as one tool for curbing the harsh effects that the contributory negligence defense visited on plaintiffs. Dan

Groth, Jr., Note, *The Long, Strange Trip of Willful and Wanton Misconduct and a Proposal to Clarify the Doctrine*, 26 J. Marshall L.Rev. 363, 376 (1993). In cases where defendants were found to be willful, the courts thought it inequitable to dismiss the entire case based on plaintiff's contributory negligence. As a result, Illinois courts did not allow willful and wanton defendants to raise the defense of contributory negligence. *Id.* (citing, e.g., *Carterville Coal Co. v. Abbott*, 181 Ill. 495, 55 N.E. 131 (1899)). With the advent of both comparative negligence and modified comparative negligence doctrines, the Illinois appellate courts re-examined the doctrine and arrived at different conclusions. *See* Groth, *supra.* Then the Illinois Supreme Court, in the seminal case of *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill.2d 429, 170 Ill.Dec. 633, 593 N.E.2d 522 (1992), clarified that the doctrine of willful and wanton misconduct remained a viable theory under the modified comparative negligence system. *Id.* at 532, 170 Ill.Dec. 633, 593 N.E.2d 522. The *Burke* court explained that there was a "qualitative difference" between negligent acts and willful and wanton misconduct which could not be compared. *Id.* at 462, 170 Ill.Dec. 633, 593 N.E.2d 522. As such, a willful and wanton defendant must still pay a plaintiff's full compensatory damages, regardless of the plaintiff's own contributory negligence. *Id.*

Illinois' Local Governmental and Governmental Employees Tort Immunity Act ("Act"), 745 ILCS 10/1–101 *et seq.*, furnishes a definition of willful and wanton misconduct that is very similar to the common-law definition. *Hampton v. Zelenz et al.*, —— Ill. App.3d ——, ——, 202 Ill.Dec. 237, 637 N.E.2d 776 (1994). The Act, in pertinent part, provides as follows: "[Willful and wanton misconduct is] a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1–210; *see also Illinois Pattern Jury Instructions* § 14.01 (July 1993).

In the recent Illinois Supreme Court Opinion of *Ziarko v. Soo Line R.R.*, 161 Ill.2d 267, 204 Ill.Dec. 178, 641 N.E.2d 402 (Ill.1994), the court reviewed the doctrine as it currently stands in Illinois. The *Ziarko* case discussed whether a defendant guilty of willful and wanton misconduct could seek contribution from another defendant guilty of ordinary negligence under Illinois' Joint Tortfeasor Contribution Act, 740 ILCS 100/0.01. In its analysis, the court recounted, "It is well established that willful and wanton acts may be found where the tortious conduct was intentional." *Ziarko*, 161 Ill.2d at 274, 204 Ill.Dec. at 182, 641 N.E.2d at 406 (citing, e.g., *Schneiderman v. Interstate Transit Lines, Inc.*, 394 Ill. 569, 69 N.E.2d 293 (1946)). Yet, the *Ziarko* court articulated that there remains some confusion on the similarity between willful and wanton misconduct and negligent acts. *Ziarko*, 161 Ill.2d at 274, 204 Ill.Dec. at 182, 641 N.E.2d at 406; *see also id.* at 292–94, 204 Ill.Dec. at 190–91, 641 N.E.2d at 414–15 (Nickels, J., dissenting) (arguing that the majority's decision acts as a super legislature and further blurs the definition of willful and wanton misconduct). The Illinois Supreme Court determined that "[u]nder the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Id.* In this way, "willful and wanton conduct may be grounds not only for punitive damages, but compensatory damages as well." *Id.*

The *Burke* court, though, distinguished between the punitive nature of the doctrine of willful and wanton misconduct and the concept of "punitive damages." The Illinois Supreme Court reasoned as follows:

> Ordinarily, punitive damages may be awarded when the defendant has acted willfully or with wanton disregard for the rights of others. Such damages are allowed as a warning and example to deter the defendant and others from committing like offenses in the future. However, the legislature has immunized municipal defendants against the payment of punitive damage. We believe that, in the absence of punitive damages, disallowing a setoff

for the plaintiff's contributory negligence can serve as an effective deterrent to a municipal defendant's willful and wanton conduct.

*Id.* (citations omitted). Therefore, although disallowing an offset to damages may appear punitive in effect, Illinois courts do not consider disallowing an offset to be "punitive damages." A successful contributory negligence defense merely reduces a plaintiff's already established "compensatory damages." Disregarding a plaintiff's negligence (i.e., applying the doctrine that plaintiff's contributory negligence cannot be a factor when defendant is guilty of willful and wanton misconduct) merely allows the plaintiff to realize his full "compensatory damages." Offsets simply reduce what the plaintiff requires to be fully compensated. Disregarding offsets may not be categorized as "punitive damages." Accordingly, the Illinois doctrine of willful and wanton misconduct is simply another theory of liability and a count alleging willful and wanton misconduct does not bring that count within the ambit of § 2674.

██ To further demonstrate the distinction between disallowing an offset and punitive damages, one may refer to the Illinois verdict forms. *Illinois Pattern Jury Instructions,* §§ B45.02, B45.02.B (March 1989). In negligence cases where plaintiff's contributory negligence is a factor, Illinois courts tender to the jury a verdict form with three distinct steps: the first step asks the jury to calculate the total amount the plaintiff suffered; the second step asks the jury to calculate the percentage of damages among the parties; and the third step asks the jury to reduce the damages by the percentage ascertained in step two.[5] The issuance of a form comprised of three steps illustrates that Illinois defines compensation apart from whatever reduction a plaintiff might actually incur. Illinois courts consider the term "compensation" to define the full amount that the jury awarded in the first step; and they define "offset" as any reduction articulated in the last step. Disregarding plaintiff's negligence does not increase plaintiff's "compensation." Accordingly, Illinois courts view the doctrine of willful and wanton misconduct not as damages *qua* damages, but rather as disallowing an offset.[6]

Application of the United States Supreme Court's two part definition of "punitive damages" and the Illinois courts' definition of willful and wanton misconduct to this FTCA suit reveals that the Estates' position is the correct one. Accordingly, the effect of the Illinois doctrine of willful and wanton misconduct on the calculation of compensatory damages does not fit the category of "punitive damages" as the *Molzof* court has defined the term.

██ In sum, the court finds that, as a matter of law, where a plaintiff seeks his full compensatory damages by disallowing an offset which recognizes plaintiff's own compara-

---

**5.** The suggested verdict form, for where plaintiff's contributory negligence is less than 50%, § B45.02B, provides as follows:

We, the jury, find for [plaintiff] and against [defendant] and further find the following:

First: Without taking into consideration the question of reduction of damages due to the negligence of [plaintiff], we find that the total amount of damages suffered by [plaintiff] as a proximate result of the occurrence in question is $_____.

Second: Assuming that 100% represents the total combined negligence of [plaintiff] and of [defendant], we find that the percentage of negligence attributable solely to [plaintiff] is _____ percent (%).

Third: After reducing the total damages sustained by [plaintiff] by the percentage of negligence attributable solely to [plaintiff], we as-

sess [plaintiff]'s recoverable damages in the sum of $_____.

**6.** This court recognizes that the majority of states allow willful and wanton defendants to offset the plaintiff's contributory negligence. Annotation, *Application of Comparative Negligence in Action Based on Gross Negligence, Recklessness, or the Like,* 10 A.L.R.4th 946 (1981). Furthermore, the court notes that the Illinois General Assembly is considering following the majority by statutorily altering the law articulated in the *Burke* decision to allow comparative fault principles to apply where the plaintiff has been found negligent and the defendant found willful and wanton. 88th Ill.Gen.Assem., Senate Bill 424, 1993 Sess.; *see also* Groth, *supra,* at 397 (proposing a willful and wanton statute to curb the present inequities). Nevertheless, the law in Illinois today remains unaltered, and this court must adhere to the current Illinois law.

tive fault, Illinois' willful and wanton doctrine may be pleaded in an FTCA lawsuit without violating the strictures of § 2674. However, as a *caveat*, the court emphasizes that, although it allows the Estates' to plead a willful and wanton count in this FTCA suit, the court's holding in no way suggests that the Estates have also proven willful and wanton misconduct. Pleading that a governmental entity acted wantonly in an FTCA lawsuit is not synonymous with proving the same. Furthermore, if the evidence presented rises to the level of intentional conduct, the court will bar the claims against the Government since, then, the claims would fall outside the purview of the FTCA. 28 U.S.C. § 2680(h).

## CONCLUSION

For the foregoing reasons, the Estates' motions for leave to amend their complaints are granted.

IT IS SO ORDERED.