United States Court of Appeals,

Eleventh Circuit.

Nos. 94-2294, 94-2398.

 BOCA CIEGA HOTEL, INC., a Florida corporation;  Barry G. Jones, d/b/a All Suites Motel;  Brenda Louise Jones, d/b/a All Suites Motel;  John Jones, Plaintiffs-Appellants,

v.

 BOUCHARD TRANSPORTATION COMPANY, INC., Maritrans Operating Partners L.P., Tug Captain Fred Bouchard Corporation, a New York corporation, Barge B 155 Corp., a New York corporation, Jose Salamanca, Captain;  Pepito G. Amora, Thomas A. Baggett, Defendants-Appellees.

April 17, 1995.

As Amended April 26, 1995.

Appeal from the United States District Court for the Middle District of Florida.  (No. 93-1616-CIV-T-17C), Elizabeth A. Kovachevich, District Judge.

Before BLACK and BARKETT, Circuit Judges, and RONEY, Senior Circuit Judge.

BLACK, Circuit Judge:

In this case we must decide whether the claims presentation procedure of the Oil Pollution Act of 1990 (OPA or Act), 33 U.S.C.A. §§ 2701-2761 (West Supp.1994), constitutes a mandatory condition precedent to the filing of private lawsuits under the Act.  We conclude that it does and affirm.[1]

I. BACKGROUND

On August 10, 1993, four vessels collided in Tampa Bay, spilling thousands of gallons of oil and other oil pollutants in

[1]We affirm the award of costs to Appellees as they are the prevailing parties in this litigation.

the process.[2] Pursuant to OPA, [3] the Coast Guard designated Appellees Bouchard Transportation (Bouchard), as owner and operator of the vessel "Tug Captain Fred Bouchard" and barge "B. 155," and Maritrans Operating Partners (Maritrans), as owner and operator of the vessel "Seafarer" and barge "Ocean 255," (collectively, Appellees) as the "responsible parties" for the spill.[4] The Appellants brought this action individually and on behalf of several plaintiff classes to recover business, property, and tourist damages sustained as a result of the spill. The complaint alleged liability under OPA's citizen suit provisions and various Florida statutory and common-law theories.

Appellees Bouchard and Maritrans moved to dismiss the complaint for lack of subject matter jurisdiction. According to Appellees, federal subject matter jurisdiction did not exist because Appellants had failed to comply with OPA's claims presentation procedure. Conforming to OPA,[5] Bouchard and Maritrans had organized a claims clearinghouse to identify, process, and settle claims arising from the spill. Appellees took the position that resort to this claims presentation process is a mandatory condition precedent to any OPA lawsuit, and that Appellants' failure to present their claims rendered them unripe for judicial

---

[2]Because the district court dismissed this action before extensive discovery could occur, we take all allegations in the complaint as true.

[3]*See* 33 U.S.C.A. §§ 2701(32) & 2714.

[4]Appellees Jose Salamanca, Pepito Amora, and Thomas Baggett were named as defendants for their role in operating another vessel involved in the spill, the "Balsa 37."

[5]*See* 33 U.S.C. §§ 2713-2714.

resolution. Appellees also disputed the existence of federal diversity jurisdiction because several of the named plaintiffs shared Florida citizenship with defendant Thomas Baggett.

In responding to Appellees' motions, Appellants never claimed that they satisfied OPA's claims presentation requirement.[6] Instead, they maintained that the claims presentation requirement only applies to actions seeking to recover from the OPA-created cleanup fund (Fund),[7] not to actions brought directly against the responsible parties. Appellants also argued that the district court possessed diversity jurisdiction over their state law claims.

In February 1994, the district court ruled in favor of Appellees and granted their motions to dismiss. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,* 844 F.Supp. 1512 (M.D.Fla.1994). This appeal follows.

## II. DISCUSSION

The only issue before us is whether the district court correctly found that compliance with OPA's claims presentation requirement is a mandatory condition precedent to the existence of

---

[6]Appellants did not allege compliance with the claims presentation procedure until their reply brief. Assuming, *arguendo,* that Appellants now are asserting compliance with OPA's claims presentation provision, we decline to address the issue because we generally do not address issues first raised in a reply brief. *Allstate Ins. Co. v. Swann,* 27 F.3d 1539, 1542 (11th Cir.1994). Moreover, even assuming that the alleged post-dismissal claims presentation could render this case moot, the issue before us is a classic example of one "capable of repetition, yet evading review." *See Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982); *Naturist Soc'y, Inc. v. Fillyaw,* 958 F.2d 1515, 1520-21 (11th Cir.1992).

[7]*See* 26 U.S.C.A. § 9509 (West 1989 & Supp.1994); 33 U.S.C.A. §§ 2701(11) & 2712.

jurisdiction over private actions brought under the Act.[8]

A. *Standard of Review*

Statutory interpretation is a question of law over which we exercise *de novo* review.  *Barnett Bank of Marion County, N.A. v. Gallagher,* 43 F.3d 631, 633 (11th Cir.1995).

B. *The Oil Pollution Act of 1990*

1. *The Act's Plain Text.*

It is axiomatic that the interpretation of a statute must begin, and usually ends, with the text of the statute.  *Estate of Cowart v. Nicklos Drilling Co.,* --- U.S. ----, ----, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992);  *United States v. Kirkland,* 12 F.3d 199, 202 (11th Cir.1994).  When interpreting the text, we give undefined terms their plain, ordinary, and most natural meaning. *Asgrow Seed Co. v. Winterboer,* --- U.S. ----, ----, 115 S.Ct. 788, 793, 130 L.Ed.2d 682 (1995);  *Brown v. Gardner,* --- U.S. ----, ---- , 115 S.Ct. 552, 555, 130 L.Ed.2d 462 (1994).

The text of OPA's claims presentation provision states:

(a) Presentation

Except as provided in subsection (b) of this section [delineating presentation to the Fund], *all claims for removal costs or damages shall be presented first to the responsible party* or guarantor....

....

(c) Election

*If a claim is presented in accordance with subsection (a) of this section* and—

(1) each person to whom the claim is presented denies all

---

[8]Appellants do not appeal the district court's finding that diversity jurisdiction did not exist. *See Boca Ciega,* 844 F.Supp. at 1516.

> liability for the claim, or
>
> (2) the claim is not settled by any person by payment within 90 days after the date upon which (A) the claim was presented, or (B) advertising was begun pursuant to section 2714(b) of this title [delineating the claims clearinghouse procedures], whichever is later,
>
> the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund.

33 U.S.C.A. § 2713 (emphasis supplied).  OPA defines a "claim" as "a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident."  33 U.S.C.A. § 2701(3).  "Damages" are "specified in section 2702(b) of this title."  33 U.S.C.A. § 2701(5).  Section 2702(b)'s definition of damages clearly includes the relief sought by Appellants in this case.  *See* 33 U.S.C.A. § 2702(b)(2)(B), (D), and (E).

Appellants do not claim that the language of § 2713 is ambiguous.  Nor could they.  Appellants' complaint constitutes a "claim" as OPA defines that term.  Section 2713 is very clear that "*all claims ... shall* be presented first to the responsible party...."  Congressional use of the word "shall" in § 2713(a) is naturally read to place a mandatory condition on all claims.  *See Mallard v. United States Dist. Court for the Southern Dist. of Iowa,* 490 U.S. 296, 300-02, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989).  In contrast, no reading of § 2713(a)'s language suggests that Congress intended to limit its applicability to claims against the Fund.

The language of § 2713(c)'s election of remedies provision bolsters our interpretation of § 2713(a).  Section 2713(c) allows

a claimant[9] whose "claim is presented in accordance with subsection (a)" to "elect to commence an action in court against the responsible party ... *or* to present the claim to the Fund."  33 U.S.C.A. § 2713(c) (emphasis supplied).  The natural reading of § 2713(c) is that claimants like Appellants, filing "in court against the responsible part[ies]," as well as claimants seeking recovery from the Fund, must present their claims in accordance with § 2713(a), supporting our conclusion that § 2713(a) applies to all claims.  In contrast, accepting Appellants' interpretation of § 2713(a) would make parts of § 2713(c) superfluous or nonsensical, a result to be avoided when interpreting statutes.  *See Ratzlaf v. United States,* --- U.S. ----, ----, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994).

2. *The Act's Structure and Purpose.*

Despite the clarity of OPA's plain language, Appellants argue that limiting the claims presentation requirement to claims against the Fund is more consistent with the overall structure and purpose of the Act.  While discovery of the plain meaning of an unambiguous statute will almost always end our inquiry, in rare and exceptional circumstances, we may decline to follow the plain meaning of a statute because overwhelming extrinsic evidence demonstrates a legislative intent contrary to the text's plain meaning.  *Hallstrom v. Tillamook County,* 493 U.S. 20, 28-30, 110 S.Ct. 304, 310, 107 L.Ed.2d 237 (1989);  *Garcia v. United States,* 469 U.S. 70, 73-75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984);  *Kirkland,* 12 F.3d at

---

[9]Defined as "any person or government who presents a claim for compensation...."  33 U.S.C.A. § 2701(4).

202.

We therefore turn to Appellants' contention that the structure and purpose of OPA so clearly contradicts the plain meaning of the claims presentation provision that we should limit that provision to claims against the Fund.

Appellants' reliance on the "overall purpose" of OPA—which they claim is "to expand the liability of responsible parties"—is misplaced. Courts have long recognized that statutes, especially large, complex statutes like OPA, are the result of innumerable compromises between competing interests reflecting many competing purposes and goals. Therefore, "vague notions" about a statute's overall purpose cannot be allowed "to overcome the words of its text regarding the *specific* issue under consideration." *Mertens v. Hewitt Associates,* --- U.S. ----, ----, 113 S.Ct. 2063, 2071, 124 L.Ed.2d 161 (1993) (emphasis in original). In short, "[w]e will not attempt to adjust the balance between ... competing goals that the text adopted by Congress has struck." *Id.* at ----, 113 S.Ct. at 2072.

Moreover, Appellants present nothing from OPA's text and little from its legislative history to convince us that expanded liability was the only, or even primary goal of the Act. On the contrary, passages from the legislative history support Appellees' claim that one goal of the claims presentation provision was to temper the Act's increased liability with a congressional desire to encourage settlement and avoid litigation. *See, e.g.,* H.R.Rep. No. 242, 101st Cong., 1st Sess., pt. 2 at 66 (1989); 135 Cong.Rec., 101st Cong., 1st Sess. H7962 (Nov. 2, 1989) (remarks of Rep. Lent). *See also Johnson v. Colonial Pipeline Co.,* 830 F.Supp. 309, 310

(E.D.Va.1993). Even if Appellants could produce textual evidence of an overall congressional purpose, the pursuit of broad policy goals in some portions of a statute generally does not demonstrate an intent to alter the plain statutory command of another provision. *See Federal Election Comm'n v. NRA Political Victory Fund,* --- U.S. ----, ----, 115 S.Ct. 537, 542, 130 L.Ed.2d 439 (1994).

Appellants' claim that OPA's preservation of state oil spill remedies, 33 U.S.C.A. § 2718(a), contradicts § 2713's plain meaning fails for the same reason. While the side-by-side co-existence of state remedies requiring no presentation and OPA remedies requiring presentation might be relevant if we were interpreting a facially ambiguous statute, the clarity of § 2713(a) forecloses that possibility. A general statutory provision like OPA's savings clause does not trump the more specific command of § 2713(a). *See Morales v. TWA, Inc.,* 504 U.S. 374, ----, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992); *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 523, 109 S.Ct. 1981, 1992, 104 L.Ed.2d 557 (1989).

Finally, Appellants' policy objections to the claims presentation requirement are directed at the wrong forum. As the Supreme Court noted when construing the notice provision of the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C.A. § 6972 (West 1989 & Supp.1994),—a provision similar to the one now before us—"we are not at liberty to create an exception where Congress has declined to do so." *Hallstrom,* 493 U.S. at 26, 110 S.Ct. at 309. "In the long run, experience teaches that strict adherence to the procedural requirements specified by the

legislature is the best guarantee of evenhanded administration of the law." *Id.* at 31, 110 S.Ct. at 311 (quoting *Mohasco Corp. v. Silver,* 447 U.S. 807, 825-27, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980)). If Appellants perceive a policy shortcoming caused by OPA's claims presentation requirement, that shortcoming "arises as a result of the balance struck by Congress," *Hallstrom,* 493 U.S. at 30, 110 S.Ct. at 311, and is properly remedied by congressional action.

Having found nothing in the text or legislative history of OPA remotely approaching the type of extraordinarily clear evidence needed to justify departing from the plain meaning of a statute's text, we turn to Appellants' remaining argument.

3. *The CERCLA Analogy.*

Appellants devoted a considerable amount of time and space in their briefs and at oral argument to the proposition that OPA's similarity with the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C.A. §§ 9601-9675 (West Supp.1994), requires us to interpret OPA's claims provision consistently with CERCLA's provision, which limits the presentation requirement to claims asserted against CERCLA's Fund. *See* 42 U.S.C.A. § 9612(a). *See, e.g., United States v. Carolina Transformer Co.,* 978 F.2d 832, 841 (4th Cir.1992) (holding that CERCLA's claims presentation provision only applies to claims asserted against the Fund). Appellants' argument is without merit.

The differences between OPA and CERCLA are more important and significant than the similarities which Appellants rely upon. Unlike OPA's claims provision, which states that "all claims ...

shall be presented ...," CERCLA's claims provision states that "[a]ll claims *which may be asserted against the Fund* ... shall be presented." *Compare* 33 U.S.C.A. § 2713(a) *with* 42 U.S.C.A. § 9612 (emphasis supplied). This significant textual change does not suggest that courts should interpret OPA's claims provision as having the same scope as CERCLA's. On the contrary, the change in the text, combined with evidence that Congress was aware of CERCLA when it enacted OPA,[10] suggests that Congress intended the change in OPA's language to have substantive consequences and purposely rejected the CERCLA approach limiting the presentation requirement to those claims asserted against the Fund. *See Brown*, --- U.S. at ----, 115 S.Ct. at 556; *NRA*, --- U.S. at ----, 115 S.Ct. at 541-42.

Appellants' invocation of the doctrine of reading statutes *in pari materia* is misplaced. While it is true that similar statutes should be read consistently, *see, e.g., Morales*, 504 U.S. at ----, 112 S.Ct. at 2037, that general rule has no bearing in this case. First of all, the doctrine of reading statutes *in pari materia* only makes sense when the word or phrase being interpreted has acquired special, non-literal significance as a legal term of art. *See Molzof v. United States*, 502 U.S. 301, 307-09, 112 S.Ct. 711, 716, 116 L.Ed.2d 731 (1992) (quoting *Morissette v. United States*, 342

---

[10]There is evidence in OPA's text, *compare* 33 U.S.C.A. § 2713(c), *with* 42 U.S.C.A. § 9612(a), and legislative history, *see* S.Rep. No. 94, 101st Cong., 1st Sess., 2 (1989), that Congress was aware of, and occasionally borrowed from, CERCLA when enacting OPA. But contrary to Appellants' argument, when that fact is coupled with a comparison of the respective claims procedures' text, the most logical conclusion is that Congress rejected the CERCLA limitation when adopting OPA's claims presentation provision.

U.S. 246, 263-65, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952)). Appellants fail to identify any word or phrase in § 2713 which has become a legal term of art. If Appellants are suggesting that all claims presentation provisions should be interpreted consistent with CERCLA's, then their argument flies in the face of clear precedent to the contrary. *See Hallstrom,* 493 U.S. at 28-31, 110 S.Ct. at 310-11 (holding that RCRA's notice provision is a condition precedent to all claims); *National Envtl. Foundation v. ABC Rail Corp.,* 926 F.2d 1096, 1097 (11th Cir.1991) (holding that Clean Water Act's notice provision is a condition precedent to all claims.).

Second, the doctrine of reading statutes *in pari materia* suggests that Congress presumably knows and adopts the "cluster of ideas" attached to the borrowed term of art, and resort to the doctrine should occur "unless otherwise instructed." *See Molzof,* 502 U.S. at 307, 112 S.Ct. at 716 (quoting *Morissette,* 342 U.S. at 263-65, 72 S.Ct. at 250). Here, where the text of the statutory provision "otherwise instructs," *id.,* the doctrine of reading statutes *in pari materia* has no place. Appellants' argument that OPA's claims presentation requirement should be read consistently with CERCLA's therefore is rejected.

In conclusion, Appellants have presented nothing which even approaches the sort of extraordinary showing of contrary legislative intent we require before departing from the plain meaning of a clear statutory text. We therefore hold that the clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented

her claims in compliance with § 2713(a) and either: (1) all responsible parties deny all liability; or (2) the claim is not settled by payment within 90 days after (A) the claim was presented, or (B) advertising was begun under section 2714(b) of the Act, whichever is later. 33 U.S.C.A. § 2713(c).

C. *Consequence of Dismissal*

All parties agree that the district court's dismissal should not be treated as a dismissal with prejudice. Appellants remain free to refile this action, if and when they comply with OPA's claims presentation procedure. *See also Hallstrom,* 493 U.S. at 31-33, 110 S.Ct. at 312 (holding that after dismissal, plaintiffs may refile suit after compliance with RCRA's 60-day notice requirement). *Cf. United States v. Daniel Good Real Property,* --- U.S. ----, ----, 114 S.Ct. 492, 506-07, 126 L.Ed.2d 490 (1993) (stating that congressional failure to specify a consequence for noncompliance with a statute's timing requirement counsels against dismissal for noncompliance).

### III. CONCLUSION

We hold that the district court correctly interpreted § 2713(a) as creating a mandatory condition precedent to bringing any claims under OPA. Consequently, the district court was correct when it granted the Appellees' motions to dismiss for lack of subject matter jurisdiction.

AFFIRMED.