OPINION

BERRIGAN, District Judge.
This suit was brought by the United States of America (the “government”), seeking reimbursement from Murphy Exploration and Production Company (“Murphy”), pursuant to the Oil Pollution Act of 1990 (“OPA”), 33 U.S.C. § 2701 et seq., for costs incurred by the United States Coast Guard (“Coast Guard”) in connection with the July 22, 1992, discharge of 500 gallons of crude oil from Murphy’s oil production platform located in Ship Shoal Block 113 into the Gulf of Mexico. On April 4, 1996, trial in this matter before the Court without a jury was submitted on briefs and written evidence with the consent of all parties.
The essential facts have been stipulated by the parties and the jurisdiction of the Court has been established. Having considered the record, the evidence, the memoranda of counsel and the law, the Court now issues its opinion and finds in favor of the government and against Murphy on the basic issue of “monitoring” costs being part of “removal” costs but reduces the amount of recovery granted the government.

BACKGROUND

This matter was submitted to the Court on briefs and documentary evidence addressing the pivotal issue of whether the $19,533.28 cost incurred by the Coast Guard in conjunction with Murphy’s cleanup efforts relating to the July 22, 1992, oil spill are recoverable under the OPA. It is stipulated that in response to this oil spill, the Coast Guard undertook various activities over a three day period, including review and monitoring of Murphy’s clean-up plans and removal operations, notification to appropriate governmental agencies, and nearly $17,000 worth of helicopter overflights to monitor the status of the release.
The record reflects that prior to the initiation of this action, the Coast Guard sent Murphy several bills for the $19,533.28 expenditure beginning in August of 1992. However, Murphy objected to the characterization of these billings for monitoring costs as removal costs. Because Murphy declined payment, the government instituted the present action to recover the aforementioned sum plus interest, penalties and administrative fees.

ANALYSIS

The government contends that the clear language of the OPA and its legislative history authorizes the Coast Guard to recover the costs of all response activities, including monitoring costs. In general, Murphy maintains that it is not liable for the government’s monitoring costs because the statute permits government recovery only for “removal costs,” which the Coast Guard did not incur. Specifically, Murphy maintains that a responsible party is liable only for removal costs and damages and that those costs do not encompass the administrative costs of monitoring a private party’s removal actions. Murphy further asserts that the government failed to designate and present its claim to Murphy in accordance with 33 U.S.C. § 2713 and § 2714, and that the Coast Guard’s expenditures were arbitrary and excessive.
*491 RECOVERABILITY OF MONITORING COSTS
With regard to the recoverability of monitoring costs, the government finds substantial support in a decision by Chief Judge Morey L. Sear, United States v. Conoco, Inc., 916 F.Supp. 581 (E.D.La.1996).[1] Murphy argues that Conoco should be distinguished because it raises issues not addressed in the Conoco case and because the government is unable to prove that its monitoring actions were necessary to minimize or mitigate damage to the public health or welfare.
This Court finds persuasive guidance in Conoco. Its reasoning is adopted by this Court as its own and the Court specifically finds that the removal costs include the challenged monitoring costs. The “removal costs” recoverable under 33 U.S.C. § 2702(b) include “all removal costs incurred by the United States ... under subsection (c) ... of section 1321 of this title, as amended by this Act.” Section 1321 of the Federal Water Pollution Control Act, 33 U.S.C. § 1321 (“FWPCA”) includes as a part of “removal authority" the authority to “direct and monitor all Federal, State, and private actions to remove a discharge.” In turn, the OPA defines “removal” or “remove” as “containment and removal of oil or a hazardous substance from water ... or the taMng of other actions as may be necessary to minimize or mitigate damage to the public health or welfare ...” at 33 U.S.C. 2701(30).[2] Athough this Court agrees with Judge Sear that the statute is not “a model of clarity,” these provisions sufficiently support the conclusion that “removal” is more than actual containment and cleanup, and the Section 2702’s reference to Section 1321(c) is inclusive rather than exclusive of monitoring costs. Conoco, 916 F.Supp. at 583.
This interpretation also comports with the legislative history of the OPA As summarized by Judge Sear:
The legislative history is not inconsistent with, and the purpose of the OPA comports with, the government’s construction of the statute. The OPA was enacted in 1990 in the wake of the nation’s largest oil spill in history — the 11 million gallon spill from the Exxon Valdez in Prince William Sound, Aaska. The OPA amended, expanded and strengthened the requirements of pre-existing statutes that addressed oil spill cleanup, liability and compensation. Before the OPA, the Federal Water Pollution Control Act (“FWPCA”) authorized, but did not require, federal removal of oil spills and approval of oil spill response plans. The OPA amended the FWPCA to require such efforts and to expand the oversight and cleanup responsibilities of the federal government. The OPA also increased potential liabilities of responsible parties and significantly broadened financial responsibility requirements.
Conoco, 916 F.Supp. at 585 (footnotes omitted).
SECTION 2713 PRESENTMENT
Murphy also argues that the government’s claim is barred because the OPA requires that all claims be presented first to the responsible party. Because the Coast Guard sought and obtained compensation from the Oil Spifi Disability Trust Fund (“OSDTF”) before presenting a claim to the responsible party, the government has failed the statutory requirement imposed by 33 U.S.C. § 2713(a).[3] In asking for dismissal, Murphy *492 relies upon Boca Ciega Hotel, Inc. v. Bouchard Transportation Co., 51 F.3d 235, 240 (11th Cir.1995).
The government barely addresses the issue raised by Murphy regarding the inadequacy of the government’s Section 2713 presentment: the government simply states that it is proceeding under the more general provisions of 33 U.S.C. § 2702(a) statutory entitlement to recovery costs: “each responsible party is liable for the removal costs and damages ... that result from the incident.” No legal authority for this position nor for the disregard of Section 2713 is offered by the government.
Despite the lack of support to the government’s response, the defendant’s cited authority on the issue of Section 2713 presentment is unavailing. The Boca Ciega district court was presented with a case filed thirty-six days after the subject discharge. Boca Ciega Hotel, Inc. v. Bouchard Transportation Co., 844 F.Supp. 1512, 1513 (M.D.Fla.1994). In affirming the district court on appeal, the Eleventh Circuit did not impose a requirement that turning to the OSDTP precluded filing suit against the responsible party. Rather, it concluded: Boca Ciega, 51 F.3d at 240. Here, the stipulated facts indicate that the Coast Guard presented its claims to Murphy and that Murphy , denied liability and refused payment for more than 90 days after receiving the request for payment. Therefore, Murphy’s situation is distinguishable from the facts in Boca Ciega and finds no independent support in the statutory language.
We therefore hold that the clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a) and either: (a) all responsible parties deny all liability; or (2) the claim is not settled by payment within 90 days after (A) the claim was presented, or (B) advertising was begun under section 2714(b) of the Act, whichever is later.
SECTION 2714 DESIGNATION
Murphy’s challenge to the lack of formal designation under 33 U.S.C. § 2714 is also unpersuasive. The Court agrees with the government that Section 2714 does not require designation of the source of the discharge when it provides: “... the President shall, where possible and appropriate, designate the source or sources of the discharge or threat.” 33 U.S.C. § 2714(a). Here, the government reasonably ascertained that formal designation was inappropriate because there was no possibility of third party claims arising out of the spill, and therefore, advertising was unnecessary.[4]
ARBITRARINESS OF HELICOPTER EXPENDITURES
The Court joins Murphy in its concern for the sum sought by the Coast Guard for helicopter expenses. The government argues that all removal costs consistent with the National Contingency Plan (“NCP”) are conclusively presumed to be reasonable, based in part on the reasoning of CERCLA case of United States v. Northeastern Pharmaceutical & Chemical Co., Inc., 810 F.2d 726 (8th Cir.1986), cert. denied, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987).[5]
Murphy relies on the stipulated fact that the Coast Guard paid $3,767.00 per hour for *493 total overflight cost of $16,951.50 on July 23, 1992, when it leased a helicopter the previous day, on July 22, 1992, at a rate of $900.00 plus $378.00 in non-rate charges for a daily total of $1,278.00. Murphy, who was actively engaged in the cleanup, incurred less charges for its 48 helicopter overflights over a three day period and maintains that those helicopters were available for government use. The government offers no proof on this issue.
The Court’s analysis is further guided by Judge Holland who, according to the Court’s research, is the only court to pass directly on this issue under the OPA:
Firstly, one can hardly say that the requisite nexus or causation exists as between a pollution incident and a cost authorized by an FOSC [federal on-scene coordinator] to, for example, replace a piece of equipment which had failed in the course of a prior, unrelated pollution incident. Secondly, to suggest that a cost is recoverable if the requisite causation exists simply because the FOSC authorized it in substance deprives a responsible party of any judicial review, and such a position would pose a serious due process problem. The court’s example is of course an extreme one. The more likely situation is one where the FOSC has authorized an expenditure and the potentially responsible party views it as significantly disproportionate to the facts of the incident. As to such questions, and as already suggested, fairness and proportionality come into consideration as a part of the arbitrariness analysis. It is simply not rational to use a large vessel to go after a spill of a few gallons of oily water from a frozen pipe which is known to have already been repaired or sealed off. Here again, expert testimony may very well be necessary in a seriously contested response situation.
United States v. Hyundai Merchant Marine Co., Ltd., Civ. Act. A94-0391-CV (HRH) (D.Alaska Jan 26, 1996) (Order on Motion for Partial Summary Judgment/Removal Costs), slip op. at pp. 9-10.
The due process ramifications inherent in the government’s position are significant. However, for present purposes, the Court finds that the government has failed to demonstrate a non-arbitrary rational basis for authorizing the challenged helicopter expenditures and that Murphy has otherwise shown that the Coast Guard acted arbitrarily and capriciously in the causing this expenditure to be made. This Court would be remiss in allowing such an arbitrary, capricious and irrational expenditure of fiscal resources, and will permit recovery for the overflight on July 23, 1992, in the amount of $1,278.00, based on the rational July 22, 1992, rate of $900.00 per hour plus $378.00 in non-rate charges.
Accordingly,
IT IS ORDERED that judgment shall be entered in favor of the United States of America and against Murphy Exploration and Production Company in the sum of $3,859.78 for removal and monitoring costs attendant to the July 22, 1992, oil spill, together with interest,[6] penalties, and administrative fees pursuant to 31 U.S.C. § 3717(a)(1), § 3717(e)(2), and § 3717(e)(1) and (2). The parties shall submit a proposed judgment approved as to form within ten days.

.Likewise, the government supports its position with United States v. Hyundai Merchant Marine Co., Ltd., No. A94-0391 CV (HRH), slip op. at 4 (D.Alaska January 26, 1996) (Order on Motion for Reconsideration), slip op. at p. 4. In Hyundai, the court held “that a fair reading of the whole of OPA leads to the conclusion that Congress intended monitoring costs to be recoverable." Id. The court also noted that "[t]he legislative history of OPA appears not to be inconsistent with the government’s contention” that monitoring costs are recoverable. Id.

. As in Conoco, the government sufficiently showed that oversight by the Coast Guard in this case was necessary to minimize and mitigate damages because it had to determine the sufficiency of Murphy's activities.

. See Conoco, 916 F.Supp. at 584, for further discussion of the OSDTF and its purpose, sources of revenue, and recovery of government response costs, including monitoring costs.

. Muiphy argues attaches much significance to the fact that the example offered in the Conference Report would not apply in this case because the government has made a claim against Murphy. Of course, offering an example does not preclude a finding that other circumstances, such as those in this case, would render a formal designation inappropriate or impossible under Section 2714(a).

. Northeastern Pharmaceutical, supra, actually discusses the relevance of cost:
Consideration of whether particular action is “necessary” is thus factored into the "cost-effective” equation. The term "cost-effective” is defined by regulation as "the lowest cost alternative that is technologically feasible and reliable and which effectively mitigates and minimizes damage to and provides adequate protection of public health, welfare, or the environment ...”
Because determining the appropriate removal and remedial action involves specialized knowledge and expertise, the choice of a particular cleanup method is a matter within the discretion of the EPA. The applicable standard of review is whether the agency’s choice is arbitraiy and capricious.
Id., 810 F.2d at 748 (citations omitted). Rather them supporting the contention that the amount spent by the agency is not susceptible of judicial review, this language recognizes the appropriate *493 ness of the arbitrary and capricious standard for such review.

. No issue has been raised as to the method of measuring recoverable interest, penalties or administrative fees as set forth in Plaintiff's Exhibit 7.