Filed 9/30/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANE DOE, | B330281 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 23SMCV00653) |
| v. | |
| SECOND STREET CORP., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Edward Moreton, Jr., Judge.  Affirmed.

Gordon Rees Scully Mansukhani, Matthew G. Kleiner, and L. Geoffrey Lee for Defendant and Appellant.

Schein Law Group and Joshua D. Schein; Sherman Law and Lisa G. Sherman for Plaintiff and Respondent.

————————————

In 2022, Congress amended the Federal Arbitration Act (FAA) by passing the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA) (9 U.S.C. §§ 401–402). In general terms, the EFAA renders arbitration agreements unenforceable at the plaintiff's election in sexual assault and sexual harassment cases that arise or accrue on or after March 3, 2022, the EFAA's effective date.

Jane Doe (plaintiff) filed the present case against Second Street Corporation dba The Huntley Hotel (the hotel) and two of its supervisors (collectively, defendants) in 2023. The operative complaint alleges a pattern of sexual harassment and discrimination both before and after the EFAA's effective date, as well as a variety of wage-and-hour violations. Defendants moved to compel arbitration, citing an arbitration provision in the hotel's employee handbook. The trial court denied the motion to compel, concluding that the EFAA rendered the arbitration provision unenforceable as to all of plaintiff's claims. The trial court also granted plaintiff leave to file a first amended complaint adding additional claims, including a claim for constructive wrongful termination.

We affirm the trial court's order in its entirety. We conclude that the trial court properly found that under the EFAA's plain language, (1) plaintiff's sexual harassment claims alleging continuing violations both before and after the EFAA's effective date are exempt from mandatory arbitration, and (2) plaintiff's other causes of action are also exempt from mandatory arbitration under the EFAA because they are part of the same "case." Accordingly, the trial court properly denied defendants' motion to compel arbitration. We further conclude

2

that the trial court did not abuse its discretion by permitting plaintiff to file a first amended complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Complaint.

Plaintiff filed the present action in February 2023 against the hotel and supervisors Manju Raman and Eman Rivani.[1] Plaintiff's initial complaint alleged that plaintiff worked as a server at the hotel's Penthouse Restaurant from 2016 to 2022. In October 2019, plaintiff was attacked and sexually assaulted outside of work by a coworker, Ryan Jackson.[2] Plaintiff reported the assault to her supervisor and asked not to be scheduled to work with Jackson. Plaintiff nonetheless at times was scheduled to work shifts that overlapped with Jackson's shifts.

In October 2021, the hotel hired Rivani as its food and beverage director. During Rivani's training, plaintiff's manager told Rivani that Jackson had sexually assaulted plaintiff and should not be scheduled with her unless it was absolutely necessary. The following month, Rivani called plaintiff into his office and asked for details of the assault. Plaintiff said she did not feel comfortable describing it, but Rivani said he would schedule plaintiff and Jackson together unless she did. After plaintiff described the assault, Rivani told her it was her fault. The following day, Rivani scheduled plaintiff and Jackson to work on the same shift, and after that, plaintiff and Jackson were regularly scheduled to work together. Plaintiff began throwing

---

[1]    Raman and Rivani are not parties to this appeal.

[2]    The initial complaint referred to Jackson as John Doe. Subsequent pleadings identified Jackson by his name.

3

up before nearly every shift.  In February 2022, Raman told plaintiff's general manager that plaintiff and Jackson had a consensual sexual relationship.

In April 2022, plaintiff ran into Jackson when she arrived for her shift.  She ran up to the stairwell and tried to access the roof, but the exit code to the roof access door had been changed. Plaintiff was relieved because she had thoughts of jumping off the roof.  When she came down the stairs, Rivani saw that plaintiff was crying and asked, " 'Is this work related?' "  Rivani then "looked her up and down and . . . walked away."

In early May 2022, when Rivani saw plaintiff, he loudly asked another employee, " [W]hat [is] the new code to the roof?' " Plaintiff began to have another panic attack and called in sick. Several days later, plaintiff reported to her medical provider that she was suicidal, and she was placed on an involuntary psychiatric hold pursuant to Welfare and Institutions Code section 5150.  On the advice of her doctors, plaintiff has not returned to work since May 10, 2022.

Plaintiff's complaint asserted 11 causes of action: (1) sexual harassment and hostile work environment in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); (2) failure to prevent discrimination, harassment, and retaliation; (3) retaliation; (4–9) failure to pay minimum or overtime wages, failure to pay split shift premiums, and failure to provide meal breaks, rest periods, and accurate pay stubs; and (10–11) slander and libel.

## II.   Defendants' motion to compel arbitration.

Defendants filed a motion to compel arbitration in March 2023.  Defendants asserted that in April 2016, plaintiff signed a document acknowledging that she had received and was

bound by the provisions of the Huntley Santa Monica Beach Employee Handbook, "particularly the provision relating to the mandatory, binding arbitration of any employment related dispute," and that she understood that "by agreeing to arbitration, [she was] waiving the right to a trial by jury of the matters covered by the 'Arbitration' provisions of the Handbook." In relevant part, the handbook's arbitration provision said: "Any controversy, dispute or claim between any employee and the Hotel, or its officers, agents or other employees, shall be settled by binding arbitration, at the request of either party. The arbitrability of any controversy, dispute or claim under this policy shall be determined by application of the substantive provisions of the Federal Arbitration Act (9 U.S.C. sections 1 and 2) and by application of the procedural provisions of the California Arbitration Act [(CAA)]. Arbitration shall be the exclusive method for resolving any dispute . . . ."

Defendants asserted that plaintiff's causes of action were subject to the employee handbook's arbitration provision; the arbitration provision was not invalidated by the EFAA because plaintiff's claims accrued before the EFAA's effective date; the arbitration provision met the threshold requirements of *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 90–91 (*Armendariz*); and the arbitration provision was not substantively or procedurally unconscionable.

### III. Plaintiff's first amended complaint and opposition to the motion to compel arbitration.

Plaintiff filed a first amended complaint (FAC) on May 9, 2023. The FAC added some additional factual detail relating to plaintiff's claims, and it alleged that plaintiff was constructively discharged on May 13, 2022. The FAC also alleged seven new

5

causes of action—sexual discrimination, wrongful termination, intentional infliction of emotional distress, negligent supervision, violation of Labor Code sections 1102.5 and 6310, and unfair business practices.

Plaintiff also filed an opposition to the motion to compel arbitration. She contended that her sexual harassment claim accrued on May 13, 2022, the day she was constructively discharged, which was *after* the EFAA's effective date of March 3, 2022. She further asserted that the 2007 employee handbook, which contained an arbitration provision, was superseded by the 2018 employee handbook, which did not; the arbitration provision in the 2007 employee handbook was procedurally and substantively unconscionable; and the arbitration provision was unenforceable under *Armendariz*.

Plaintiff submitted a declaration in support of her opposition to the motion to compel arbitration. In relevant part, plaintiff stated that Jackson sexually assaulted her in October 2019. From late June 2020 through May 13, 2022, she repeatedly asked defendants to separate her from Jackson, who continued to make sexual overtures to her. Instead, defendants forced plaintiff to relive the traumatic experience by retelling it, blamed her for the assault, and required plaintiff to have frequent contact with Jackson. Further, defendants "perpetuated the sexually hostile work environment through [her] constructive wrongful termination."

## IV. Order denying motion to compel arbitration.

The trial court denied the motion to compel arbitration. The court found that plaintiff's claims for sexual harassment and constructive discharge accrued either on the day of plaintiff's constructive discharge or on the date of the last act alleged to

6

constitute a hostile work environment.  Plaintiff alleged she was subject to a hostile work environment through May or June 2022, and she was constructively discharged on May 13, 2022.  Accordingly, plaintiff's claims accrued after March 3, 2022, the EFAA's effective date, and were not subject to mandatory arbitration.  Further, even if some of plaintiff's causes of action did not allege sexual harassment or sexual assault, the EFAA makes an arbitration agreement unenforceable with respect to a "case," not merely " 'the claim or claims in which [the sexual harassment] dispute plays a part.' "  In other words, "[t]he EFAA invalidates an arbitration clause as to the entire case, and therefore, the arbitration provision here cannot be enforced against any of Plaintiff's claims, not just those alleging sexual harassment."  The court thus denied defendants' motion to compel arbitration.[3]  The court also exercised its discretion to allow plaintiff to file the FAC.

The hotel timely appealed from the order denying the petition to compel arbitration and permitting plaintiff to file a FAC.

## DISCUSSION

The hotel contends that where, as here, a plaintiff alleges sexually harassing conduct that occurred both before and after the EFAA's effective date, the case should be sent to arbitration if the plaintiff's claims accrued, or the "crux" of the alleged wrongful conduct occurred, before the EFAA's effective date.  The

---

[3]     Because the trial court concluded that the arbitration agreement was barred by the EFAA, it did not consider other arguments raised by the parties regarding the existence and enforceability of the arbitration agreement.

hotel contends that under this test, all of plaintiff's claims accrued, and the crux of the alleged wrongful conduct occurred, before the EFAA's enactment because plaintiff could have initiated a legal action before 2022. The hotel thus urges that plaintiff should be compelled to arbitrate all of her claims. It further contends that (1) even if the EFAA required some of plaintiff's claims to be tried in court, her remaining claims should be sent to arbitration, and (2) the trial court abused its discretion by permitting plaintiff to file a FAC while defendants' motion to compel arbitration was pending.

As discussed more fully below, we conclude that all of plaintiff's claims are exempt from mandatory arbitration under the EFAA, and the trial court did not abuse its discretion by permitting plaintiff to file a FAC. We therefore affirm the trial court's order in its entirety.

## I.  Plaintiff's sexual harassment claims are not subject to arbitration because they accrued after the EFAA's effective date.

As noted above, the arbitration provision of the hotel's employee handbook stated that the arbitrability of any claim shall be determined according to the substantive provisions of the FAA and the procedural provisions of the CAA. We discuss the relevant statutes below.

### A. Arbitration procedures under the CAA; standard of review.

Pursuant to Code of Civil Procedure[4] section 1281.2, "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists. . . ."

" 'The trial court may resolve motions to compel arbitration in summary proceedings, in which . . . "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." ' " (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 763–764.) The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense. (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1106; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

An order denying a petition to compel arbitration is an appealable order. (§ 1294, subd. (a).) Ordinarily, we review a denial of a petition to compel arbitration for substantial evidence or an abuse of discretion, but where the trial court's denial of a petition to arbitrate presents a pure question of law, including a

---

[4]     All undesignated statutory provisions are to the Code of Civil Procedure.

question of statutory interpretation, we review the order de novo. (*Kader v. Southern California Medical Center, Inc.* (2024) 99 Cal.App.5th 214, 221 (*Kader*); *State ex rel. Cisneros v. Alco Harvest, Inc.* (2023) 97 Cal.App.5th 456, 459.)

### B.    The FAA and the EFAA.

The FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in [the EFAA]."  (9 U.S.C. § 2.)  Historically, courts have broadly applied the FAA's mandate to enforce arbitration agreements, explaining that " ' "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." ' "  (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 945, quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985) 473 U.S. 614, 626; see also *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 118 [FAA " 'seeks broadly to overcome judicial hostility to arbitration agreements' "].)

In 2022, Congress amended the FAA by adopting the EFAA.  In relevant part, the EFAA provides:  "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute."  (9 U.S.C. § 402(a).)  A "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  (*Id.*, § 401(4).)  A "sexual assault dispute" is "a

10

dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in section 2246 of title 18 or similar applicable Tribal or State law."  (9 U.S.C. § 401(3).)[5]

The House Judiciary Committee's report on the EFAA explained the Act's purpose as follows:  "H.R. 4445, the 'Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021,' would prohibit the enforcement of mandatory, pre-dispute arbitration ('forced arbitration') provisions in cases involving sexual assault or sexual harassment.  Over the past several decades, forced arbitration clauses have become virtually ubiquitous in everyday contracts.  Often buried deep within the fine print of employment and consumer contracts, forced arbitration deprives millions of Americans of their day in court to enforce state and federal rights.  Because arbitration lacks the transparency and precedential guidance of the justice system, there is no guarantee that the relevant law will be applied to these disputes or that fundamental notions of fairness and equity will be upheld in the process.  Furthermore, due to the secretive nature of this system, these disputes are often shielded from public scrutiny.  [¶] . . . [¶]

---

[5]     Any issue as to whether the EFAA applies "shall be determined under Federal law.  The applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator."  (9 U.S.C. § 402(b).)

"In many forced arbitration cases, the company is entitled to choose the arbitrator who decides the case, as well as the rules of procedure and evidence that apply, and the distribution of costs of the arbitration. The rules also protect the company by keeping the records of an arbitration secret. Because the records in arbitration are protected, employers that use arbitration clauses in their employment contracts can retaliate against a victim—rather than confront the harasser or the attacker—without fear of their actions becoming public through the courts. The secretive nature of arbitration also prevents victims from sharing their stories. This allows for the growth of office cultures that ignore harassment and retaliate against those who report it, prevent future victims from being warned about dangerous companies and individuals, and create incentives for the corporate protection of rapists and other serial harassers. [¶] H.R. 4445 would restore access to justice for millions of victims of sexual assault or harassment who are currently locked out of the court system and are forced to settle their disputes against companies in a private system of arbitration that often favors the company over the individual." (H.R.Rep. No. 117-234, 2d Sess., pp. 3–4 (2022), fns. omitted.)

## C.   Accrual under the EFAA.

By its terms, the EFAA applies "with respect to *any dispute or claim that arises or accrues* on or after the date of enactment of this Act"—i.e., March 3, 2022. (Pub.L. No. 117-90, § 3, 136 Stat. 26, 28 (2022), italics added.)[6] Courts have interpreted this

---

[6]    The accrual provision appears in a statutory note, but it nonetheless is legally binding. (See *Olivieri v. Stifel, Nicolaus &*

language "to provide two distinct calculations, either of which is sufficient to trigger the EFAA: when the 'dispute[ ] . . . *arise*[*s*]' and when the 'claim[ ] . . . *accrue*[*s*].' " (*Scoggins v. Menard, Inc.* (S.D. Ohio, Aug. 19, 2024, No. 2:24-CV-00377) 2024 WL 3860464, p. *5, app. pending, italics added (*Scoggins*); see also *Hodgin v. Intensive Care Consortium, Inc.* (S.D. Fla. 2023) 666 F.Supp.3d 1326, 1329 ["arise" and "accrue" necessarily have different meanings to "reconcile the redundancy of saying that a claim arises *and* accrues"]; *Papaconstantinou-Bauer v. Jackson Hosp. & Clinic, Inc.* (M.D. Ala., Mar. 18, 2024, No. 2:22cv178-MHT) 2024 WL 1158362, p. *5 [courts interpreting the Act "have generally settled upon reading the statute's temporal requirement to say that ' "disputes . . . arise[ ]" and "claims . . . accrue[ ]" ' "]; *Mulugu v. Duke University School of Medicine* (M.D.N.C., Aug. 7, 2024, No. 1:23CV957) 2024 WL 3695220, p. *22 [same].)

The parties agree that no California case has addressed when a sexual harassment claim "accrues" under the EFAA where, as here, a plaintiff alleges sexually harassing conduct

---

*Company, Incorporated* (2d Cir. 2024) 112 F.4th 74, 84, fn. 4 (*Olivieri*) ["It makes no legal difference that this provision is codified in a statutory note, not the main body, of the United States Code"]; see also *Kader, supra,* 99 Cal.App.5th at p. 222 ["All provisions enacted by Congress, including a provision codified as a statutory note, must be given equal weight regardless of their placement by the codifier. [Citation.] 'The Court must read § 402(a) in conjunction with the statutory note, as both are binding law.' "].)

occurring both before and after the EFAA's enactment.[7]  The hotel suggests there is a "national split of authority" on this question, and it urges us to conclude that plaintiff's claim accrued under the EFAA as soon as plaintiff could have initiated a legal action.  Plaintiff disagrees, contending that a sexual harassment claim does not "accrue" under the statute until the date of the last act of harassment.

None of the cases on which the hotel relies holds that a plaintiff alleging harassment both before and after the EFAA's enactment can be compelled to arbitrate.  Instead, in each case the court concluded that the EFAA did not apply because although the plaintiff filed suit after Congress adopted the EFAA, all of the alleged sexual harassment or sexual assault occurred before the EFAA's enactment.  (See, e.g., *Castillo v. Altice USA, Inc.* (S.D.N.Y. 2023) 698 F.Supp.3d 652, 654, 657 [plaintiff alleged harassment and retaliation between Sept. and Dec. 2021; "[b]ecause the discriminatory conduct and retaliation alleged did not occur after March 3, 2022—indeed, Plaintiff concedes that her claims for sexual harassment and retaliation accrued prior to March 3, 2022—the EFAA does not retroactively apply to the

---

[7]     In *Kader, supra*, 99 Cal.App.5th at pages 222–224, Division Five of this court considered when a "dispute arises" under the EFAA.  Because we conclude that plaintiff's sexual harassment claims "accrued" after the EFAA's effective date, we need not consider when the dispute between the parties "ar[o]se[]."  (See also *Famuyide v. Chipotle Mexican Grill, Inc.* (8th Cir. 2024) 111 F.4th 895 [affirming order denying motion to compel arbitration because defendant did not establish that dispute arose prior to EFAA's effective date].)

Complaint"];[8] *Barnes v. Festival Fun Parks, LLC* (W.D. Pa., June 27, 2023, No. 3:22-CV-165) 2023 WL 4209745, p. *12 [EFAA did not apply because "[e]ven if Plaintiff's claim of sexual harassment is viewed as a continual violation culminating in a discriminatory discharge, the dispute arose in July 2019 when the discriminatory conduct began, *and at the latest, her claim accrued on July 14, 2021, the date her employment was terminated*" (italics added)];[9] *Grimsley v. Patterson Company, LLC* (Tenn. App., Nov. 7, 2023, No. M2022-00987-COA-R3-CV) 2023 WL 7327720, pp. *1, 5 [plaintiff resigned in December 2021 due to ongoing sexual harassment; "In a case where the employee allegedly has been sexually harassed and has been terminated or constructively discharged *with the continuing offense ceasing prior to the effective date of the Act*, . . . we cannot say that the claim or dispute arose or accrued after the last date of employment" (italics added)]; *Newcombe-Dierl v. Amgen* (C.D.

---

[8] The hotel erroneously suggests that the tortious conduct alleged in *Castillo* "may [have been] ongoing in 2023," and that *Castillo*, like the present case, concerned sexual harassment alleged to occur both before and after the EFAA's effective date. In fact, the *Castillo* opinion is clear that all the alleged harassment and retaliation occurred "in late 2021" and "did not occur after March 3, 2022." (*Castillo, supra*, 698 F.Supp.3d at p. 657.)

[9] The hotel's opening brief erroneously asserts that in *Barnes* the sexual harassment was alleged to occur both before and after the EFAA's enactment, but that the court "focus[ed] on the earlier occurring conduct." In support, the hotel misquotes *Barnes* by omitting the italicized portion of the language quoted above, which makes clear that the *Barnes* court noted both when the alleged misconduct began *and* ended.

15

Cal., May 26, 2022, No. CV22-2155-DMG (MRWx) 2022 WL 3012211, p. *5 ["Dierl's claims accrued when the adverse employment action occurred and she was injured, which was no later than November 12, 2021, the date of her termination. [Citation.] *This injury predated March 3, 2022*, so the Act does not apply" (italics added)]; *Zinsky v. Russin* (W.D. Pa., July 22, 2022, No. 2:22-CV-547) 2022 WL 2906371, p. *3 [EFAA did not apply because alleged sexual assault occurred prior to EFAA's enactment].)

In contrast, several federal courts have held that where a plaintiff alleges sexual harassment both before and after the EFAA's adoption, the action accrues on the date of the last alleged act. The Second Circuit addressed this issue in *Olivieri*, *supra*, 112 F.4th 74. There, Olivieri sued her employer, Stifel, under the New York State Human Rights Law, alleging that her manager sexually assaulted and repeatedly sexually harassed her, and Stifel subjected her to a hostile work environment after Olivieri reported her manager's conduct. (*Id.* at p. 77.) Olivieri filed her initial complaint in January 2021 but continued working for Stifel; after the EFAA's enactment, Olivieri sought leave to file an amended complaint alleging subsequent acts of harassment and retaliation. (*Id.* at p. 83.) The district court permitted Olivieri to file an amended complaint and concluded that the EFAA applied because Olivieri's hostile work environment claims were continuing violations. (*Ibid.*)

The Second Circuit affirmed. It explained that the question of when a claim "accrues" usually arises in the statute of limitations context and "depends on the nature of the claim." (*Olivieri*, *supra*, 112 F.4th at p. 87.) Some claims accrue "when the defendant commits the injurious act," while other claims

16

accrue "when the plaintiff experiences the injury" or "discovers, or should have discovered, the injury caused by a defendant's conduct." (*Ibid.*) Finally, some claims "accrue serially: they accrue (and reaccrue) pursuant to the continuing violation doctrine. That doctrine 'provides an exception to the normal knew-or-should-have-known accrual date'—meaning an exception to how accrual normally works. [Citation.] For claims that are 'composed of a series of separate acts that collectively constitute one "unlawful . . . practice," ' the continuing violation doctrine lays out an alternative framework for evaluating accrual. [Citation.] [¶] Because such claims are made up of a series of acts, they accrue and reaccrue with each successive act that is part of the singular unlawful practice." (*Id.* at pp. 87–88.)

The *Olivieri* court noted that hostile work environment claims typically are subject to the continuing violation doctrine because "unlike discrete acts, '[t]heir very nature involves repeated conduct.' " (*Olivieri*, *supra*, 112 F.4th at p. 88.) The court explained: "A hostile work environment generally doesn't occur on any one day; it emerges 'over a series of days or perhaps years.' [Citation.] It is this 'constellation of events' that gives rise to a hostile work environment claim. [Citation.] As a result, the continuing violation doctrine provides that such claims do not accrue—and the statute of limitations period does not begin to run—'until the last discriminatory act in furtherance of' the hostile work environment." (*Ibid.*) Accordingly, " '[i]f "an act contributing to the hostile environment occurs within the filing period," the hostile work environment claim is timely, and a factfinder can hold a defendant liable for "the entire time period of the hostile environment," including the period falling outside of the limitations period.' " (*Ibid.*)

17

Applying this analysis to the case before it, the Second Circuit rejected Stifel's contention that Olivieri's claim must have accrued before the EFAA's effective date because she filed suit before the EFAA's enactment. The court said: "[Stifel's] reasoning might make sense in the context of a claim for which there is a single accrual date, but not in the context of a claim subject to the continuing violation doctrine. Under that doctrine, Olivieri's claim *did* accrue before the EFAA was enacted. And it *reaccrued* with each successive act that was part of the single continuing course of conduct underlying the hostile work environment claims. Because hostile work environment claims continue to accrue 'until the last discriminatory act in furtherance of' the hostile work environment, such claims can have multiple accrual dates." (*Olivieri*, *supra*, 112 F.4th at pp. 88–89.)

The *Olivieri* court continued: "Defendants admit that the term 'accrual' has ' "different meanings in different contexts," ' [citation], but they resist the logical consequence of that acknowledgment. Essentially, Defendants ask us to read the statute in this context as tying a claim's accrual date to the date it *first* accrued. [¶] But if Congress wanted the EFAA to apply only to claims that 'first' accrue after its enactment, it could have said so. Congress is clearly familiar with the phrase, which appears in multiple other statutes. *See*, *e.g.*, 28 U.S.C. § 2401 ('[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action *first accrues*' (emphasis added)); *id*. §§ 2415(b), 2462, 2501, 2636(i) (establishing limitations period for other causes of actions when such claim 'first accrues'); 42 U.S.C. § 2187(d) (same, but for patent claims). If Congress had tied the

18

effective date of the EFAA to when a claim *first* accrues, we might reach a different conclusion. But it didn't, and we 'do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply.' " (*Olivieri, supra*, 112 F.4th at p. 89.)

The court noted, moreover, that the presumption that Congress intended this meaning of "accrual" was "particularly appropriate here because the EFAA applies to 'sexual harassment dispute[s],' 9 U.S.C. § 402, which are prototypical 'hostile work environment' claims, see *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (describing standard for ' "hostile environment" sexual harassment' claims). [Fn. omitted.] So in providing that the EFAA applies to claims that accrue after the effective date of the statute, Congress knew that the accrual rules that apply to hostile work environment claims would come into play in such cases." (*Olivieri, supra*, 112 F.4th at pp. 89–90.)

The court concluded, finally, that its interpretation of "accrue" did not give the EFAA improper retroactive effect. It explained: "[G]iven the ongoing nature of a hostile work environment claim, which is a singular claim predicated on a series of acts over a course of time, to the extent that Olivieri alleges post-Effective-Date conduct, the application of the statute to a claim arising in part from that conduct can't properly be described as 'retroactive.' Defendants' contractual rights are affected not just by 'conduct arising before [the EFAA's] enactment,' [citation], but also by conduct that occurred *after* its enactment. [¶] Second, even if application of the EFAA to conduct predating the statute could be considered retroactive, for the reasons set forth above, Congress has expressly indicated

19

that the statute applies to claims that accrue after the statute's effective date—which in the context of continuing claims may involve conduct that predated the EFAA." (*Olivieri, supra,* 112 F.4th at p. 91.)

The district court came to the same conclusion in *Delo v. Paul Taylor Dance Found., Inc.* (S.D.N.Y. 2023) 685 F.Supp.3d 173. There, Delo alleged that her supervisor sexually harassed and discriminated against her between September 2021 and her termination in July 2022. (*Id.* at pp. 177–178.) The district court held that under the EFAA, Delo's claims were not subject to arbitration even though some of the alleged harassment and discrimination occurred prior to the EFAA's effective date. The court explained: "As the Supreme Court has observed, '[h]ostile work environment claims are different in kind from discrete acts'—instead, '[s]uch claims are based on the cumulative effect of individual acts.' [*National Railroad*] *Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) [(*Morgan*)]. Thus, 'a single act of [alleged] harassment may not be actionable on its own,' *id.*, but it can still be considered as part of 'the entire scope of [the] hostile work environment claim[.]' " (*Id.* at pp. 185–186.) In the case before the court, Delo alleged acts of harassment after March 3, 2022 that were " 'sufficiently related' " to the earlier alleged acts because they "occurred in the same environment," "were primarily perpetrated by the same person," and "uniformly relate to [Delo's supervisor's] purported mistreatment of and disdain for female employees, particularly those who are pregnant or have childcare responsibilities." (*Id.* at p. 187.) Accordingly, the court said, "[t]he post-March 3, 2022 allegations can thus be considered acts that 'contribute' to the hostile work environment, and as

20

such, Delo's claim accrued after the EFAA's enactment date." (*Ibid.*)

Other federal district courts have reached similar conclusions. (See, e.g., *Turner v. Tesla Inc.* (N.D. Cal. 2023) 686 F.Supp.3d 917, 924 [plaintiff's claims were "temporally within the scope of the EFAA" because plaintiff first complained to a supervisor about sexual harassment in Mar. 2021, but alleged further harassment from Jan. 2022 for " 'several months' " and did "not concede that the harassment . . . ceased at any point prior to [plaintiff's] termination" in Sept. 2022]; *Watson v. Blaze Media LLC* (N.D. Tex., Aug. 3, 2023, No. 3:23-CV-0279-B) 2023 WL 5004144, p. *3 ["for purposes of the EFAA, hostile work environment claims . . . accrue on the date of the last act contributing to the violation"]; *Betancourt v. Rivian Automotive, LLC* (C.D. Ill., Aug. 21, 2023, No. 22-1299-JES-JEH) 2023 WL 5352892, p. *5 [alleged sexual harassment and hostile work environment between Dec. 2021 and Apr. 2022 "represents a continuing violation which was ongoing on the date the EFAA was enacted with the result that the Arbitration Agreement and joint-action waiver are nonenforceable"].)

We agree with the federal authorities cited above that the EFAA applies where a plaintiff alleges a course of sexually harassing conduct that occurs both before and after the EFAA's enactment. As many of those cases note, the United States Supreme Court has said that where sexual discrimination or harassment claims involve repeated conduct, "[t]he 'unlawful employment practice' . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." (*Morgan, supra*, 536 U.S. at

21

p. 115.)[10]  Accordingly, the high court has held in the statute of limitations context that "a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the [limitations] period." (*Id.* at p. 122; see also *Green v. Brennan* (2016) 578 U.S. 547, 562 [limitations period for hostile-work-environment claim runs from the last act composing the claim].)

It is against this backdrop that Congress passed the EFAA. "A cardinal rule of statutory construction holds that . . . '[w]here Congress borrows terms of art . . . , it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken.' " (*Molzof v. United States* (1992) 502 U.S. 301, 307; see also *Smith v. Spizzirri* (2024) 601 U.S. 472, 477 [rejecting interpretation of

---

[10]  In *Morgan*, the court explained:  "The following scenarios illustrate our point:  (1) Acts on days 1–400 create a hostile work environment.  The employee files the charge on day 401.  Can the employee recover for that part of the hostile work environment that occurred in the first 100 days?  (2) Acts contribute to a hostile environment on days 1–100 and on day 401, but there are no acts between days 101–400.  Can the act occurring on day 401 pull the other acts in for the purposes of liability?  In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one 'unlawful employment practice' and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole.  Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 *all incidents are still part of the same claim*."  (*Morgan*, *supra*, 536 U.S. at p. 118, italics added.)

word that "disregards the [word's] long-established legal meaning"]; *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 577 ["if a word has a well-established legal meaning, we assume the Legislature intended to use it in that sense"].) Accordingly, we presume that when Congress used the word "accrue" in the EFAA, it intended to import the meaning of "accrue" developed by federal and state courts over many years in the context of sexual harassment claims—that is, that a sexual harassment claim asserting a continuing violation "accrues" on the date of the last act constituting such violation, even if the conduct could have been actionable earlier.

The hotel contends that we should not import a statute of limitations accrual analysis into the EFAA because the statute of limitations affects a plaintiff's substantive rights, while the EFAA "merely dictates procedural rights." We do not agree. As we have discussed, when Congress passed the EFAA in 2022, there was a well-developed body of case law addressing when hostile environment sexual harassment claims "accrue." The hotel does not cite any cases adopting a different meaning of "accrue" in this context, nor has the hotel directed our attention to anything in the statute's legislative history suggesting that Congress intended a different meaning of "accrue" for purposes of the EFAA.

The hotel also urges that the EFAA should apply only to claims of harassment that occurred entirely after the Act's passage in order to further the "strong federal and state public policy favor[ing] enforcement of contractual arbitration." But as we have said, Congress articulated an entirely different intent when it amended the FAA by adopting the EFAA—to *contract*

23

arbitrability, not to expand it. In the EFAA context, therefore, a " 'heavy presumption' " of arbitrability is not appropriate.

For all the foregoing reasons, we conclude that the EFAA applies to continuing violations that occur, at least in part, after the statute's effective date, even if some of the conduct constituting the continuing violation occurred earlier. With that framework in mind, we now turn to the allegations of plaintiff's complaint.

### D. Plaintiff's sexual harassment claims accrued after the EFAA's effective date.

Plaintiff's original and first amended complaint alleged that the hotel and its agents engaged in conduct that constituted sexual harassment, discrimination, and retaliation in violation of the FEHA both before and after the EFAA's effective date. Specifically, both versions of the complaint alleged that beginning in May or June 2021, the hotel sometimes scheduled plaintiff and Jackson to work on the same shift; in November 2021, Rivani insisted that plaintiff describe her sexual assault by Jackson in detail; in February 2022, Raman told plaintiff's general manager that plaintiff and Jackson had a consensual sexual relationship; in April 2022, Rivani angrily confronted plaintiff when she began crying at work after seeing Jackson; and from November 2021 through May 2022, with knowledge that Jackson had sexually assaulted plaintiff, Rivani regularly scheduled plaintiff and Jackson on the same shifts. In short, both versions of the complaint unquestionably asserted actionable sexual harassment that began prior to the EFAA's enactment and continued through May 2022, *after* the statute's effective date. (9 U.S.C. § 401(4).) The EFAA therefore applied and rendered the arbitration

24

provision unenforceable, at least as to the causes of action alleging sexual harassment.

The hotel suggests that the original complaint did not allege conduct subject to the EFAA, and thus the trial court erred by "relying entirely on the new sham allegation" that plaintiff was constructively terminated in May 2022. We do not agree. While the original complaint did not allege wrongful termination, it unquestionably alleged harassing and retaliatory conduct after March 3, 2022. Accordingly, plaintiff's claims are subject to the EFAA under both the original and first amended complaint.

## II. The trial court properly concluded that all of plaintiff's claims are subject to the EFAA.

The hotel next contends that even if the arbitration provision is unenforceable as to plaintiff's sexual harassment claims, plaintiff's other claims should be ordered to arbitration.[11] Plaintiff disagrees, contending that the EFAA precludes arbitration of the entire case. Plaintiff is correct.

The district court considered the same issue in *Johnson v. Everyrealm, Inc.* (S.D.N.Y. 2023) 657 F.Supp.3d 535 (*Johnson*), where some, but not all, of the plaintiff's claims alleged sexual harassment. The court began by explaining that under the FAA generally, " 'if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation.' " (*Id.* at p. 558.) However, the FAA's liberal federal policy favoring arbitration agreements "may be 'overridden by a contrary congressional command.' [Citation.]

---

[11] The hotel does not specify which claims it believes should be "pars[ed]" from the sexual harassment claims, but in light of our conclusion, the omission is not significant.

. . . The question here is whether the EFAA, which applies '[n]otwithstanding any other provision of [the FAA's] title,' 9 U.S.C. § 402(a), does, such that the presence of a well-pled sexual harassment claim makes an arbitration clause unenforceable as to the other claims in the case." (*Ibid.*)

Turning to the statutory language, the *Johnson* court noted that the EFAA makes a predispute arbitration agreement invalid and unenforceable "with respect to *a case* which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute." (9 U.S.C., § 402(a), italics added.) The court noted that the word "case" "is familiar in the law. Dictionaries define a 'case' as 'a suit or action in law or equity. [Citations.] '[C]ase' thus captures the legal proceeding as an undivided whole. It is does not differentiate among causes of action within it. The term 'case' stands in contrast to the terms 'claim' and 'cause of action.' A 'claim is 'a right to something,' [citation], or 'the assertion of an existing right; any right to payment or to an equitable remedy,' [citation]. A 'cause of action' is 'the grounds (such as violation of a right) that entitle a plaintiff to bring a suit,' [citation], 'a group of operative facts giving rise to one or more bases for suing,' or 'a factual situation that entitles one person to obtain a remedy in court from another person,' [citation]. Case law is, unsurprisingly, in accord. It underscores that a 'case' or 'action' refers to an overall legal proceeding filed in a court, whereas a 'claim' or a 'cause of action' refers to a specific assertable or asserted right within such a proceeding." (*Johnson, supra*, 657 F.Supp.3d at pp. 558–559.)

Having concluded that "case" refers to an entire action, the court reasoned that the EFAA's text "makes clear that its invalidation of an arbitration agreement extends to the entirety

26

of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute (for example, a claim of unlawful retaliation for a report of sexual harassment).  If further confirmation of that understanding were needed, a surrounding EFAA provision—the one that sets the EFAA's effective date—uses the narrower term 'claim.'  As enacted in the Statutes at Large, the EFAA provides that 'the amendments made by [it], shall apply with respect to any dispute *or claim* that arises or accrues on or after Mar. 3, 2022.' *See* Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022) (emphasis added).  [Fn. omitted.]  Congress, in enacting the EFAA, thus can be presumed to have been sensitive to the distinct meanings of the terms 'case' and 'claim.'  'When Congress includes particular language in one section of a statute but omits it in another, th[e] Court presumes that Congress intended a difference in meaning.' [Citation.]  Courts presume 'that Congress intended the words in a statute to carry weight.'  [Citations.]  The reading of the EFAA that lends coherence to the use of these separate terms assigns distinct meanings to 'case' and 'claim,' with the former referring to the entirety of the lawsuit in which claim(s) implicating a sexual harassment dispute are brought." (*Johnson, supra,* 657 F.Supp.3d at pp. 559–560.)

The court continued:  "In construing § 402(a), it is significant, too, that the EFAA amended the FAA directly (rather than, for example, amending a separate statute, such as Title VII, to bar the arbitration of certain claims arising under it).  That reinforces Congress's intent to override—in the sexual harassment context—the FAA's background principle that, in cases involving both arbitrable and non-arbitrable claims, 'the

27

former must be sent to arbitration even if this will lead to piecemeal litigation.' [¶] . . . [¶] . . . Congress's choice to amend the FAA directly with text broadly blocking enforcement of an arbitration clause with respect to an entire 'case' 'relating to' a sexual harassment dispute reflects its rejection—in this context—of the FAA norm of allowing individual claims in a lawsuit to be parceled out to arbitrators or courts depending on each claim's arbitrability." (*Johnson, supra*, 657 F.Supp.3d at pp. 560–561.)

Accordingly, the court concluded, where a claim in a case alleges " 'conduct constituting a sexual harassment dispute' " within the meaning of the EFAA, "the EFAA, at the election of the party making such an allegation, makes pre-dispute arbitration agreements unenforceable with respect to *the entire case relating to that dispute*." (*Johnson, supra*, 657 F.Supp.3d at p. 561, italics added.)

*Johnson* has been widely followed. (See, e.g., *Olivieri, supra*, 112 F.4th at p. 92 [citing *Johnson*]; *Turner v. Tesla, Inc., supra*, 686 F.Supp.3d at p. 925 ["*Johnson v. Everyrealm* is persuasive concerning its statutory interpretation of the EFAA and its result"]; *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.* (S.D.N.Y., Aug. 23, 2024, No. 23-CV-10753) 2024 WL 3925757, p. *7 ["[T]he EFAA's provision that a litigant may elect to invalidate an arbitration agreement for any 'case' requires courts to render such agreements unenforceable for an <u>entire case</u>. [Citation.] This is so even if only some or one of the claims a party asserts specifically relate to sexual harassment and/or sexual assault"]; *Scoggins, supra*, 2024 WL 3860464, at *7 ["the arbitration agreement is unenforceable against the entirety of Plaintiff's *case*, not just her claims of sexual harassment"];

28

*Baldwin v. TMPL Lexington LLC* (S.D.N.Y., Aug. 19, 2024,
No. 23 Civ. 9899 (PAE)) 2024 WL 3862150, p. *7 ["*Johnson*'s
holding has been widely followed . . . ."]; *Arouh v. GAN Limited*
(C.D. Cal., Mar. 22, 2024, No. 8:23-cv-02001-FWS) 2024 WL
3469032, p. *6 ["When a plaintiff brings several claims, some of
which are sexual harassment claims and some of which are not,
the EFAA precludes arbitration as to *all* claims . . . ."]; *Watson v.
Blaze Media LLC, supra*, 2023 WL 5004144, at *2 ["If a plaintiff
alleges a sexual harassment dispute, a predispute arbitration
agreement is unenforceable as to 'the entirety of the case relating
to the sexual harassment dispute, not merely the discrete claims
in that case that themselves either allege such harassment or
relate to a sexual harassment dispute' "].)

The hotel urges us to adopt an alternative analysis
articulated in *Mera v. SA Hospitality Group, LLC* (S.D.N.Y. 2023)
675 F.Supp.3d 442 (*Mera*), but that case is inapposite.[12] In *Mera*,
the plaintiff sued his employer, alleging both individual hostile
work environment and sexual harassment claims, and
representative wage-and-hour claims on behalf of the employer's
nonexempt employees. (*Id.* at pp. 446–448.) The district court

---

[12] The hotel characterizes *Mera*'s approach as the "majority
view," but we are aware of just one other case, *Silverman v.
DiscGenics, Inc.* (D. Utah, Mar. 13, 2023, No. 2:22-CV-00354-
JNP-DAO) 2023 WL 2480054, that adopted its approach. *Dixon
v. Dollar Tree Stores, Inc.* (W.D.N.Y., Mar. 7, 2023, No. 22-cv-
131S) 2023 WL 2388504, p. *7, the other case the hotel cites, did
not consider whether a claim subject to the EFAA removed the
entire case (as opposed to specific claims) from compelled
arbitration because there the court concluded that *none* of the
plaintiff's claims were subject to the EFAA.

said that "under the EFAA, an arbitration agreement executed by an individual alleging conduct constituting a sexual harassment dispute is unenforceable only to the extent that the case filed by such individual 'relates to' the sexual harassment dispute, *see* 9 U.S.C. § 402(a); in other words, only with respect to the claims in the case that relate to the sexual harassment dispute. To hold otherwise would permit a plaintiff to elude a binding arbitration agreement with respect to wholly unrelated claims affecting a broad group of individuals having nothing to do with the particular sexual harassment affecting the plaintiff alone." (*Id.* at p. 447.) The court reasoned that the case before it was distinguishable from *Johnson* because there the plaintiff alleged claims only on his own behalf, while Mera alleged both harassment claims that were unique to him *and* wage-and-hour claims on behalf of all nonexempt employees. (*Mera,* at p. 448.) The court thus concluded that the wage-and-hour claims were subject to arbitration because they "do not relate in any way to the sexual harassment dispute." (*Ibid.*)

We adopt *Johnson*'s well-reasoned analysis. As *Johnson* notes, the EFAA facially applies to "*a case* which . . . relates to the sexual assault dispute or the sexual harassment dispute." (9 U.S.C. § 402(a), italics added.) By its plain language, then, the statute applies to the entire *case*, not merely to the sexual assault or sexual harassment claims alleged as a part of the case. It is significant, moreover, that the statute does not require that the pendant claims *arise out of* the sexual assault or sexual harassment dispute; it is enough that the case *relates to* the sexual assault or sexual harassment claims.

Here, although not all of plaintiff's causes of action arise out of her sexual harassment allegations, the "case"

30

unquestionably "relates to" the sexual harassment dispute because all of the causes of action are asserted by the same plaintiff, against the same defendants, and arise out of plaintiff's employment by the hotel. Accordingly, the arbitration agreement is unenforceable as to each cause of action alleged in plaintiff's FAC. (See *Turner v. Tesla, Inc.*, *supra*, 686 F.Supp.3d at pp. 925– 926.)[13]

## III. The trial court did not abuse its discretion by permitting plaintiff to file a FAC while defendants' motion to compel arbitration was pending.

The hotel contends, finally, that the trial court abused its discretion by allowing plaintiff to file a FAC while defendants' motion to compel arbitration was pending. Not so. A plaintiff may amend her complaint "once without leave of the court at any time before the answer, demurrer, or motion to strike is filed, or after a demurrer or motion to strike is filed but before the demurrer or motion to strike is heard if the amended pleading is filed and served no later than the date for filing an opposition to the demurrer or motion to strike." (§ 472, subd. (a).) Thereafter, the trial court may allow further amendment "in its discretion, . . . upon any terms as may be just." (§ 473, subd. (a)(1).) Such amendments generally may occur " 'at any

---

[13] Having so concluded, we need not consider the alternative grounds plaintiff asserts for affirming the trial court's order—i.e., that the 2018 employee handbook, which did not contain an arbitration provision, superseded the 2007 handbook, which did; and that the arbitration provision in the 2007 handbook was unenforceable under *Armendariz* and was substantively and procedurally unconscionable.

time before or after commencement of trial, in the furtherance of justice' (§ 576) so long as the amendments do not raise new issues against which the opposing party has had no opportunity to defend." (*North Coast Village Condominium Association v. Phillips* (2023) 94 Cal.App.5th 866, 881; see also *Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 354 ["A trial court may allow the amendment of a pleading at any time up to and including trial."].)  " '[L]eave to amend a complaint is entrusted to the sound discretion of the trial court, and . . . the exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse of discretion.' (*McMillin v. Eare* (2021) 70 Cal.App.5th 893, 909.)" (*North Coast Village*, at p. 881; *Singh*, at p. 355.)

The hotel contends that its motion to compel arbitration was "the functional equivalent of an [a]nswer," and therefore because defendants had filed a motion to compel, plaintiff could not file an amended complaint without court permission.  The hotel cites no case authority for this proposition, which we reject. In any event, the trial court expressly granted plaintiff leave to file a FAC; thus, even if court permission were required, it was granted.

The hotel also contends the trial court should not have allowed plaintiff to file her FAC concurrently with her opposition to the motion to compel, thus giving the hotel only four court days to address the new allegations.  Instead, the hotel urges, the trial court "should have required the parties to restart the briefing" to allow it time to respond to the "drastic change in factual and legal claims."  But the hotel did not ask the trial court to continue the hearing or to allow it to refile its motion to compel; instead, it urged on the merits that plaintiff should not be permitted to file

32

an amended complaint because it was untimely and included sham allegations.  The hotel's contention thus is forfeited.  (E.g., *San Bernardino County Board of Supervisors v. Monell* (2023) 91 Cal.App.5th 1248, 1270.)

Finally, the hotel urges that permitting plaintiff to file a FAC violated its "statutory right to an immediate interim stay upon filing the Motion to Compel Arbitration."  But section 1281.4 does not provide for an automatic stay.  Instead, it provides that a court shall "*upon motion of a party* to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined." (§ 1281.4, italics added.) The hotel does not demonstrate either that it filed a motion for stay separate from its motion to compel arbitration, or that the trial court was required to rule on its stay request prior to the date of the noticed hearing.  Accordingly, no stay was in place when plaintiff filed her FAC.

For all of these reasons, the trial court did not abuse its discretion by permitting plaintiff to file a FAC.

## DISPOSITION

The order denying appellant Second Street Corporation's motion to compel arbitration and granting respondent Jane Doe leave to file a first amended complaint is affirmed. Respondent is awarded her appellate costs.

## CERTIFIED FOR PUBLICATION


                                        EDMON, P.J.


We concur:



                EGERTON, J.



                BERSHON, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.